IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOSHUA HUTCHINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-185-WKW-GMB |
| | ) | [WO] |
| DERRICK CUNNINGHAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Plaintiff Joshua Hutchinson claims that he was subjected to dangerous conditions of confinement while incarcerated at the Montgomery County Detention Center, causing him significant and ongoing psychological damage. Pending before the court are five motions: (1) a Rule 25 and 12(b) motion to dismiss the claims against Defendant D.T. Marshall filed by Defendants D.T. Marshall, Kevin J. Murphy, Barbara Palmer, Wanda J. Robinson, and Melvin Turner (Doc. 72); (2) a Rule 12(b)(6) motion to dismiss filed by Defendants Daffany Abbington, Tiffany Clark, Teresa Varden, Dionne Baker, and Sharon Smith (Doc. 73); (3) a Rule 12(b)(6) motion to dismiss filed by Defendants QCHC, Inc., Johnny Bates, Donald Kern, and Jerry Gurley (Doc. 75); (4) a Rule 12(b)(6) motion to dismiss filed by Defendants Derrick Cunningham, Wanda J. Robinson, Barbara Palmer, Kevin J. Murphy, and Melvin Turner (Doc. 77); and (5) a Rule 12(b)(6) motion to dismiss filed by Defendants Deborah Muse, Kim Patterson, and Michelle Beasley (Doc. 100).

The motions are fully briefed and ripe for resolution by the court. On October 3, 2017, this matter was referred to the undersigned United States Magistrate Judge for

pretrial proceedings and determinations or recommendations as may be appropriate. Doc. 96.  Having reviewed the parties' filings and the applicable authority, and for the reasons that follow, the undersigned recommends (1) all claims against Defendant "Dr. White" be DISMISSED WITHOUT PREJUDICE for failure to perfect service and for failure to prosecute; (2) the Rule 25 motion to dismiss Defendant D.T. Marshall (Doc. 72) be GRANTED and all claims against that defendant be DISMISSED WITHOUT PREJUDICE; (3) the motions to dismiss Defendants Daffany Abbington, Dionne Baker, Tiffany Clark, Sharon Smith, Teresa Varden, Deborah Muse, Kim Patterson, and Michelle Beasley (Docs. 73 & 100) be DENIED; (4) the motion to dismiss Defendants QCHC, Inc., Johnny Bates, Donald Kern, and Jerry Gurley (Doc. 75) be GRANTED IN PART and DENIED IN PART; and (5) the motion to dismiss Defendants Derrick Cunningham, Wanda J. Robinson, Barbara Palmer, Kevin J. Murphy, and Melvin Turner (Doc. 77) be GRANTED.

## I.  STANDARD OF REVIEW

All of the pending motions to dismiss argue that Hutchinson's claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Some defendants also argue that Hutchinson's claims against Marshall should be dismissed because Hutchinson failed to substitute a new defendant in accordance with Federal Rule of Civil Procedure 25(a)(1) after a suggestion of Marshall's death was filed.

A Rule 12(b)(6) motion may challenge the sufficiency of a plaintiff's pleading as well as its timeliness. *See* Fed. R. Civ. P. 12(b)(6); *Lischke v. Stewart*, 2016 WL 2962216,

at *1 (S.D. Ala. May 20, 2016) (citing *Foster v. Savannah Comm.*, 140 F. App'x 905, 907 (11th Cir. 2005)).  When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's allegations as true and construe them liberally in the plaintiff's favor. *Stovall v. Hancock Bank of Ala.*, 2013 WL 3357851, at *5 (M.D. Ala. July 3, 2013).  A district court must also favor the plaintiff with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571 (11th Cir. 1990). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant has acted unlawfully." *Id.*

While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Further, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  It is appropriate for a court to grant a motion to dismiss on Rule 12(b)(6) grounds "when it is demonstrated beyond a doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Reeves v. DSI Sec. Servs.*, 331 F. App'x 659, 661 (11th Cir. 2009).

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff Joshua Hutchinson filed his complaint on March 29, 2017, claiming that he was subjected to dangerous conditions of confinement while incarcerated at the Montgomery County Detention Center (hereinafter, the "County Jail"). Doc. 1. Hutchinson's claims arise specifically "from his pretrial incarceration, where he was subjected to extended and unjustified solitary confinement under conditions amounting to virtual torture, causing him significant and ongoing psychological damage." Doc. 70 at ¶ 1. He also claims that he was "discriminated against based on his disability and denied a reasonable accommodation (modification) for his disability (sleep apnea)." Doc. 70 at ¶ 1.

Following the filing of multiple motions to dismiss, Hutchinson sought leave to amend his complaint to "clarify the legal and factual bases for plaintiff's claims in light of the issues raised by defendants' motions to dismiss." Doc. 67 at ¶ 2.  The court granted Hutchinson's motion, and he filed his amended complaint on July 25, 2017. Docs. 69 & 70.

The amended complaint is the operative pleading before the court and asserts multiple claims against nineteen defendants based on the conditions of Hutchinson's confinement at the County Jail. Doc. 70.  The defendants are (1) Derrick Cunningham,

4

Sheriff of Montgomery County, Alabama from January 16, 2015 to the present, and prior to that Chief Deputy of the Montgomery County Sheriff's Department (Doc. 70 at ¶ 4); (2) D.T. Marshall, Montgomery County Sheriff during the relevant time period until January 16, 2015, when he was replaced by Cunningham (Doc. 70 at ¶ 5); (3) Wanda J. Robinson and Barbara Palmer, both "high-ranking" officers in the Montgomery County Sheriff's Department (Doc. 70 at ¶¶ 6–7); (4) Kevin J. Murphy, Chief Deputy of the Montgomery County Sheriff's Department during the relevant time period after Cunningham became Sheriff (Doc. 70 at ¶ 8); (5) Melvin Turner, Assistant Chief Deputy of the Montgomery County Sheriff's Department during the relevant time period (Doc. 70 at ¶ 9); (6) QCHC, Inc. ("QCHC"), medical provider for the County Jail during the relevant time period (Doc. 70 at ¶ 10); (7) Drs. Johnny Bates, Donald Kern, Jerry Gurley, and "___ White," physicians employed by QCHC who treated Hutchinson during the relevant time period (Doc. 70 at ¶ 11); and (8) Daffany Abbington, Tiffany Clark, Deborah Muse, Kim Patterson, Michelle Beasley, Teresa Varden, Dionne Baker, and Sharon Smith, nurses employed by QCHC who treated Hutchinson during the relevant time period (collectively, the "Nurse Defendants") (Doc. 70 at ¶ 12). Dr. Bates also was the owner, founder, and CEO of QCHC, and Dr. Kern was its corporate medical director; both were final policymakers for QCHC during the relevant time period. Doc. 70 at ¶ 11.

Accepting as true all relevant facts set forth in Hutchinson's amended complaint, the court finds the following facts:

During the relevant time period, Hutchison was a pretrial detainee awaiting trial on a federal charge of felon in possession of a firearm. Doc. 70 at ¶ 3. Unable to make bond,

Hutchinson was first incarcerated at the County Jail. Doc. 70 at ¶ 13.  This incarceration began on September 11, 2014 and ended on April 28, 2015, when Hutchinson was transferred to the Montgomery City Jail "in order to extricate him from the intolerable conditions to which he was subjected" at the County Jail. Doc. 70 at ¶¶ 14–15.

Hutchinson suffers from sleep apnea, which affects the major life function of sleeping, and this condition requires him to use a continuous positive airway pressure ("CPAP") machine while he sleeps. Doc. 70 at ¶¶ 16 & 25.  His wife brought his CPAP machine to the County Jail for his sleep apnea. Doc. 70 at ¶¶ 17 & 26.

Jail command staff, including Marshall, Cunningham, Palmer, Murphy, and Turner, were concerned about the potential for Hutchinson or another inmate to use the CPAP machine as a weapon. Doc. 70 at ¶ 18.  To avoid that issue, and to accommodate Hutchinson's need to sleep with the CPAP machine, jail command staff, including Marshall, Cunningham, Palmer, Murphy, and Turner, decided that Hutchinson should be segregated from the general inmate population. Doc. 70 at ¶¶ 18 & 27.  To carry out this decision, these defendants moved Hutchinson to a suicide-watch cell on September 12, 2014, which effectively placed him in solitary confinement. Doc. 70 at ¶¶ 18–19 & 27.

Hutchinson's cell was approximately six feet wide, did not have windows, and the lights were kept on 24 hours a day. Doc. 70 at ¶¶ 20 & 22.  Although the cell had a sink and toilet, Hutchinson could shower only at the discretion of the jailers and sometimes went as long as five days between showers. Doc. 70 at ¶ 21.  While segregated, Hutchinson had no access to jail programs and services, including outdoor recreation, television, and the library. Doc. 70 at ¶ 23.  Hutchinson was placed in a suicide-watch cell solely for

reasons related to his CPAP machine, not any behavioral or disciplinary reasons. Doc. 70 at ¶ 24.  At the time Hutchinson was moved to this cell, jail command staff, including Marshall, Cunningham, Palmer, Robinson, Murphy, and Turner, were aware that (1) the lights in the cell were never turned off, (2) Hutchison would not be allowed access to outdoor recreation or any other jail programs while confined in this cell, (3) extended periods of time in solitary confinement presented a substantial risk of serious harm to confined inmates, and (4) the risk of harm presented by solitary confinement would be exacerbated by other factors, including lack of exercise, lack of other stimulation, and constant lighting. Doc. 70 at ¶¶ 28−31.

The County Jail has policies and procedures related to the use of solitary confinement as a disciplinary measure. Doc. 70 at ¶ 32.  These policies and procedures allow an inmate to have a hearing prior to being placed in solitary confinement as a punishment. Doc. 70 at ¶ 33.  Hutchinson was not given a hearing, however, and he was never given an opportunity to avoid being placed in a suicide-watch cell. Doc. 70 at ¶¶ 34−35.  The decision to place Hutchinson in a suicide-watch cell was for the convenience of the jail staff. Doc. 70 at ¶ 36.

Before placing Hutchinson in a suicide-watch cell, Marshall, Robinson, Cunningham, Palmer, Murphy, and Turner considered other options for accommodating his CPAP machine that would not require placing him in a suicide-watch cell, such as allowing him to remain in the general inmate population during the day and then moving him to a suicide-watch or other medical cell at night to sleep. Doc. 70 at ¶¶ 37−38.

However, "the command staff defendants"[1] placed Hutchinson in a solitary suicide-watch cell for 24 hours a day. Doc. 70 at ¶ 39.

Prior to Hutchinson's incarceration at the County Jail, he was "a well-adjusted, intelligent, and friendly person." Doc. 70 at ¶ 43.  By October 2014, however, the effects of solitary confinement had damaged his mental health to such an extent that he was "unable to understand their cause and communicate his needs." Doc. 70 at ¶ 44. Hutchinson currently suffers from "selective muteness" as a result of his solitary confinement. Doc. 70 at ¶ 45.  He "transformed from a person with a normal presentation to a withdrawn, non-communicative, angry, and paranoid individual who would refuse to eat, refuse medical care, and engage in other antisocial behaviors." Doc. 70 at ¶ 49. Although he is capable of speaking and understanding others, "he will speak only to his wife and is withdrawn almost to the point of being a hermit." Doc. 70 at ¶ 45.

Hutchinson's deterioration was observed by "QCHC personnel," including the Physician and Nurse Defendants. Doc. 70 at ¶ 48.  Each of the Nurse Defendants was employed in the County Jail on a regular schedule during the period of Hutchison's incarceration and had contact with him "multiple times a week, if not multiple times a day." Doc. 70 at ¶ 50.  Hutchinson had daily interactions with "QCHC nursing personnel," including the Nurse Defendants, because he required daily distilled water for his CPAP machine, was prescribed daily medications, was having his weight monitored, and was under close observation due to his deterioration. Doc. 70 at ¶ 51.  Hutchinson's cell was

---

[1] The individuals comprising "the command staff defendants" are not specifically defined in the amended complaint.  Taking the facts in the light most favorable to Hutchinson, the "command staff defendants" are comprised of Cunningham, Marshall, Robinson, Palmer, Murphy, and Turner, all of whom were Sheriff's Department personnel at the County Jail during all or some of the relevant time period.

also next to the nurse's station in the jail infirmary, and he was seen by the Nurse Defendants on regular daily rounds. Doc. 70 at ¶ 52.  The Nurse Defendants discussed his medical condition among themselves, with correctional officers, and with the County Jail's physicians on a regular basis. Doc. 70 at ¶ 53.  The Nurse Defendants were aware of Hutchinson's deterioration "during and after October 2014." Doc. 70 at ¶ 54.

Drs. Kern, Bates, and Gurley (collectively, the "Physician Defendants") also saw Hutchinson, reviewed his medical records, and conferred with nurses about his condition on multiple occasions "during and after October 2014." Doc. 70 at ¶ 55.  Therefore, they were also aware of his deterioration by October 2014. Doc. 70 at ¶ 55.

Hutchinson further alleges that, based on an unspecified entry in his jail medical records from February 14, 2015, the Nurse and Physician Defendants were aware—by that date "at the latest"—of his severe deterioration and that it was "caused by the inhumane conditions of his confinement." Doc. 70 at ¶¶ 56–57.  After February 14, 2015, the Nurse and Physician Defendants each reviewed Hutchinson's medical records, including the February 14th entry, had multiple contacts with him, were aware of his deteriorating mental state, and were aware that it was connected with the conditions of his confinement, but they "failed and refused to take steps to address" those conditions. Doc. 70 at ¶¶ 58–59.  More specifically, the Physician Defendants knew that Hutchinson was in solitary confinement with the lights turned on at all times and limited access to jail activities and other inmates, knew that housing inmates in such conditions would likely cause mental and emotional harm, observed and received reports regarding the harm to Hutchinson, but still "failed and refused to take steps to address" the conditions of his confinement. Doc. 70 at ¶ 60.

By February 14, 2015, at the latest, the "command staff defendants" were informed by QCHC personnel of Hutchinson's deterioration and that it was caused by the conditions of his confinement. Doc. 70 at ¶ 62.  Nevertheless, they "failed and refused to take steps to address" those conditions. Doc. 70 at ¶ 62.

Hutchinson contends that all of the "individual defendants, with deliberate indifference and knowing the conditions to which [he] was subjected and of his deterioration, took no action to address the inhumane conditions of confinement to which [he] was subjected at any time prior to [his] being transferred out of the jail." Doc. 70 at ¶ 63.  Hutchinson was not permitted to be in the general inmate population during the day or otherwise permitted contact with other inmates. Doc. 70 at ¶ 64.  He was not moved to a different cell with normal lights, the lights in his cell were not modified so that they could be turned off, and no efforts were made to block the lights in his cell at night or any other time. Doc. 70 at ¶¶ 65–67.

Hutchinson claims that each defendant had a duty to protect him but they did not perform that duty, resulting in his injury. Doc. 70 at ¶ 68.  Hutchison further alleges that the defendants intentionally and with deliberate indifference violated his constitutional rights, causing him to suffer physical and emotional injuries and damages. Doc. 70 at ¶¶ 68–71.

Hutchinson asserts five causes of action against the defendants.  Count I is a claim against each individual defendant and QCHC pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution. Doc. 70 at ¶¶ 72–79.  Count II asserts a claim against the

"sheriff defendants"[2]—presumably, Cunningham, Marshall, Robinson, Palmer, Murphy, and Turner—in their individual capacities for violation of Hutchinson's procedural due process rights under the Fourteenth Amendment to the United States Constitution. Doc. 70 at ¶¶ 80–84.   Count III asserts another claim against the "sheriff defendants"—again, presumably, Cunningham, Marshall, Robinson, Palmer, Murphy, and Turner—in their individual capacities for violation of his substantive due process rights under the Fourteenth Amendment to the United States Constitution. Doc. 70 at ¶¶ 85–89.   Count IV asserts a claim against Cunningham in his official capacity for a violation of Title II of the Americans with Disabilities Act ("ADA") for failure to accommodate and for discriminating against Hutchinson because of his disability. Doc. 70 at ¶¶ 90–100.   Count V asserts another claim against Cunningham in his official capacity for a violation of Section 504 of the Rehabilitation Act for discriminating against Hutchinson based on his disability. Doc. 70 at ¶¶ 101–113.   Hutchinson seeks compensatory and punitive damages, injunctive and declaratory relief, and any other relief to which he may be entitled. Doc. 70.

## III.  DISCUSSION

### A.    Dismissal of Defendant "Dr. White"

A review of the docket shows that great effort has been undertaken in this case simply to ascertain the names of the proper defendants.   Indeed, as of the date of this recommendation, only one defendant remains partially identified and unserved: "Dr. ____

---

[2] As with the "command staff defendants," Hutchinson does not specifically identify the individuals who comprise the "sheriff defendants."   Nevertheless, viewing the allegations in the light most favorable to Hutchinson, the "sheriff defendants," at least in this instance, are Cunningham, Marshall, Robinson, Palmer, Murphy, and Turner, all of whom were Sheriff personnel at the County Jail during all or some of the relevant time period.

White." Doc. 70 at ¶ 11.

On June 15, 2017, the court ordered Hutchinson to show cause no later than June 23 why his claims against Dr. White should not be dismissed for failure to prosecute. Doc. 57.  On June 22nd, Hutchinson responded to the court's order, explaining that Dr. White had not been properly served and may not have been properly identified in the complaint and that he was currently working to identify the individual defendant known as Dr. White. Doc. 60.  In light of this explanation, the court permitted Hutchinson until August 4, 2017 to identify and to serve Dr. White. Doc. 64.

On July 25, 2017, Hutchinson amended his complaint, clarifying his claims and adding new defendants. Doc. 70.  As a result, the court extended Hutchinson's deadline to serve any unserved defendants, including Dr. White, to September 4, 2017. Doc. 69.

September 4 passed with no evidence presented to the court to indicate that Dr. White had been properly identified or served.  As a result, the court ordered Hutchinson to show cause no later than September 12 why his claims against Dr. White should not be dismissed for failure to perfect service and for failure to prosecute. Doc. 87.  Hutchinson never responded to that order, and to date there is no evidence or proof on the record demonstrating that the individual defendant identified as Dr. White was ever properly identified[3] and served with the complaint or the amended complaint within Rule 4(m)'s 90-day deadline or within the extended deadlines granted by the court.  Accordingly, for these reasons, the undersigned RECOMMENDS that Hutchinson's claims against "Dr.

---

[3] Indeed, the Nurse Defendants represent that "No physician with this last name [*i.e.*, White], or a similar last name, has worked in the [County Jail] or for QCHC." Doc. 74 n.2.

White" be DISMISSED WITHOUT PREJUDICE for failure to perfect service and for failure to provide proof of service pursuant to Rules 4(l) and (m) of the Federal Rules of Civil Procedure and for failure to prosecute his claims against this defendant. *See, e.g.*, *Mesa v. Kiehl*, 2017 WL 4544897, at *2 (N.D. Ga. Sept. 14, 2017) (recommending dismissal without prejudice of claims against defendant for failure to serve, to provide proof of service, and to prosecute); *Stewart v. Bureaus Inv. Group # 1, LLC*, 2013 WL 5424000, at *2 (M.D. Ala. Sept. 26, 2013) (dismissing sixteen defendants without prejudice for failure to serve in accordance with Rule 4(m)).

**B.     Motion to Dismiss Defendant D.T. Marshall**

Marshall, Robinson, Palmer, Murphy, and Turner have moved to dismiss Hutchinson's claims against Marshall pursuant to Rules 25(a)(1) and 12(b) of the Federal Rules of Civil Procedure. Doc. 72.  Because the motion is due to be granted under Rule 25(a)(1), as discussed below, the undersigned will not address the merits of the motion under Rule 12(b).

Marshall was Sheriff during Hutchinson's incarceration at the County Jail until January 16, 2015, when he was replaced by Cunningham. Doc. 70 at ¶ 5.  On April 24, 2017, Marshall, Cunningham, Robinson, Palmer, Murphy, and Turner filed a suggestion of Marshall's death. Doc. 25.  As a result, the court ordered the parties to indicate by May 2 whether they intended to file a substitution motion pursuant to Federal Rule of Civil Procedure 25 and, if they did, to file any such motion by July 24, 2017.[4] Doc. 45.  The

---

[4] Rule 25(a)(1) requires that a motion for substitution be "made within 90 days after service of a statement noting the death," and if no such motion is filed by that deadline, "the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1).  July 24, 2017 is 90 days after the suggestion of Marshall's death was filed.

court further warned that if a substitution motion was not filed by the July 24 deadline, the court would recommend that Hutchinson's claims against Marshall be dismissed for failure to comply with Rule 25. Doc. 45.

On April 28, 2017, Hutchinson filed a notice that he intended to file a substitution motion pursuant to Rule 25 with respect to Marshall. Doc. 49. However, he did not file a substitution motion by the July 24 deadline or any time thereafter.

Instead, on September 1, 2017—almost six weeks after the July 24 deadline had passed—Hutchinson filed a motion to extend the time to perfect service on Marshall's estate. Doc. 83. Hutchinson argued that, as of the filing of this motion, a probate estate had not been opened for Marshall (even though he had been deceased for more than a year),[5] that it was "expected" that either his widow would probate his will or an estate would be opened through other means, and that it is "expected" that service would be accomplished on a substitute defendant in the "near future." Doc. 83. Hutchinson requested an additional 60 days to serve Marshall's estate but did not provide the court with a clear plan on when or how an estate would be opened for Marshall, when a motion to substitute would be filed, and when a substitute defendant would be served.

On September 5, 2017, the undersigned denied as moot Hutchinson's motion for extension of time to serve Marshall's estate, explaining that Hutchinson should have filed a substitution motion within the time frame set by Rule 25, irrespective of whether an estate had been opened. Doc. 87. The deadline for Hutchinson to file a motion to substitute was July 24, 2017, and since he did not file a substitution motion or a request for an extension

---

[5] Marshall passed away on March 23, 2016. Doc. 83.

of time to file a substitution motion by that deadline, his claims against Marshall should be dismissed. Doc. 87.

Federal Rule of Civil Procedure 25 provides that, if a party dies and the claims are not extinguished, a motion to substitute may be made by any party or the decedent's representative. Fed. R. Civ. P. 25(a)(1).  However, if a substitution motion is not made within 90 days after service of a statement noting death, the action by or against the decedent "must be dismissed." *Id.*  July 24, 2017 was 90 days after the suggestion of Marshall's death was filed.  Therefore, Hutchinson was required to file a substitution motion by that date to preserve his claims against Marshall, or he must demonstrate excusable neglect for failing to do so.

Hutchinson has done neither here.  At no time between the date the suggestion of Marshall's death was filed and served—April 24, 2017—and the date of this recommendation has Hutchinson moved to substitute any defendant for Marshall, even though he has been deceased for almost two years. *See* Docs. 25 & 83.  Further, while Hutchinson may have requested an extension of time to serve Marshall's estate, he filed this motion almost six weeks after his July 24 deadline had passed, and he failed to articulate then and has failed to articulate now any excusable neglect for why he could not have sought an extension of time to file his substitution motion before the deadline expired. For these reasons, Hutchinson's claims against Marshall are due to be dismissed pursuant to Rule 25(a)(1).

On a final note, the court recognizes that Hutchinson is suing Marshall in his individual capacity only. Doc. 70 at ¶ 5.  Therefore, the automatic-substitution provision

for public officers set forth in Rule 25(d) does not apply because that subsection is applicable only when a public officer who is a party in an official capacity dies while an action is pending. Fed. R. Civ. P. 25(d).  Accordingly, for the reasons stated above, the undersigned RECOMMENDS that the motion to dismiss Marshall (Doc. 72) be GRANTED and that Hutchinson's claims against this defendant be DISMISSED WITHOUT PREJUDICE for failure to comply with Rule 25(a)(1).

## C.   Motions to Dismiss the Nurse Defendants

Hutchinson asserts a single claim against the Nurse Defendants for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment through 42 U.S.C. § 1983.  The essence of this claim is that Hutchinson was placed in solitary confinement solely because of his need to use his CPAP machine, that the conditions of his confinement caused his mental health to deteriorate severely, that the Nurse Defendants were aware of his mental deterioration and knew that it was caused by the conditions of his confinement and that, despite this knowledge, they failed or refused to take any steps to address or to change the conditions of his confinement.  The Nurse Defendants have moved to dismiss this claim arguing that it is barred by the statute of limitations, that the amended complaint is an impermissible shotgun pleading, and that Hutchinson fails to state a claim against them upon which relief can be granted.  For the reasons that follow, the undersigned finds that the Nurse Defendants' motions should be denied.

### 1.   Statute of Limitations

As a threshold issue, the Nurse Defendants argue that Hutchinson's deliberate

indifference claim cannot proceed because it is untimely.  The statute of limitations for claims brought pursuant to § 1983 is determined by the appropriate state statute of limitations governing personal injury claims. *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).  In Alabama, "that limitations period is two years." *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("The two-year limitations period . . . applies to section 1983 actions in Alabama.") (internal alterations omitted)); Ala. Code § 6-2-38(l).

The question of when a § 1983 action accrues is governed by federal law. *Parrish v. City of Opp, Ala.*, 898 F. Supp. 839, 842 (M.D. Ala. 1995) (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).  In § 1983 cases, "'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent to a person with a reasonably prudent regard for his rights.'" *Calhoun v. Ala. Alcoholic Bev. Control Bd.*, 705 F.2d 422, 425 (11th Cir. 1983) (quoting *Reeb v. Economic Opp. Atlanta, Inc.*, 516 F.2d 924, 930 (11th Cir. 1983)).  Therefore, § 1983 cases "do not accrue until the plaintiff knows or has reason to know that he has been injured." *Mullinax*, 817 F.2d at 716.  "Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury." *Id.*

The Nurse Defendants contend that the statute of limitations on Hutchinson's deliberate indifference claim began to run either in October 2014, when the Nurse Defendants became "well aware" of his mental deterioration, or on February 14, 2015, when an entry in his jail medical records informed the Nurse Defendants of his severe

17

mental deterioration and that it was caused by the conditions of his confinement.  The crux of the Nurse Defendants' argument is that if they were aware of Hutchinson's declining mental condition and its cause by October 2014 or February 14, 2015, at the latest, then Hutchinson should have also been aware of his declining mental condition by that same time, making the filing deadline for his deliberate indifference claim two years from February 14, 2015—or by February 14, 2017—at the latest.  According to the Nurse Defendants, because Hutchinson did not file his lawsuit until March 29, 2017, his § 1983 deliberate indifference claim against them should be dismissed as untimely.

The Nurse Defendants call this conclusion "axiomatic," but the undersigned is less certain of its logic or support in the law.  The Nurse Defendants are asking the court to assume that if they were subjectively aware of Hutchinson's declining mental health and its cause by a certain date, then Hutchinson also must have been aware of his mental decline and its cause by that same time because the Nurse Defendants cannot know something about Hutchinson that he himself does not know.  This is a logical leap the undersigned is unwilling to make.  The fact that A knows B about C does not equate to C knowing B about C, particularly when C is experiencing a severe mental deterioration rendering him "unable to understand [its] cause and communicate his needs," as Hutchinson is alleged to have been experiencing during the same time the Nurse Defendants are alleged to have become aware of his declining mental condition and its cause.

Indeed, the Nurse Defendants acknowledge that, in § 1983 cases, the statute of limitations does not begin to run until the facts that would support a cause of action are apparent to a person with reasonably prudent regard for his rights. *Calhoun*, 705 F.2d at

18

425.  Put differently, § 1983 actions do not accrue until the plaintiff—not the defendant—knows or has reason to know that he has been injured and who inflicted the injury. *Chappell*, 340 F.3d at 1283.  In this case, the alleged facts illustrate that the very injury on which Hutchinson's claims are based significantly compromised his ability to appreciate that he had, in fact, been injured.  Taking as true the allegations in the amended complaint establishing that Hutchinson lacked the mental capacity to understand fully that he was being injured and who was inflicting this injury, the undersigned cannot say that it is facially apparent from the amended complaint when Hutchinson knew or had reason to know that he was being injured by the Nurse Defendants' deliberate indifference to his serious medical needs.  It follows that, since a Rule 12(b)(6) dismissal on statute-of-limitations grounds is appropriate "only if it is facially apparent that the claim is time-barred," the undersigned cannot recommend dismissal of Hutchinson's deliberate indifference claim against the Nurse Defendants based on the statute of limitations. *Baker v. Sanford*, 484 F. App'x 291, 292 (11th Cir. 2012) (citing *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005)).

Moreover, even if it was facially apparent from the amended complaint that Hutchinson knew or should have known by October 2014 or February 14, 2015, at the latest, that the Nurse Defendants were injuring him, the undersigned would not recommend dismissal of his deliberate indifference claim against these defendants on statute-of-limitations grounds because he adequately alleges a "continuing violation" of the law.  The continuing violation doctrine is an exception to the general rule regarding the statute of limitations. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).  This doctrine allows "a

19

plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001)). "When the violation alleged involves continuing injury, the cause of action accrues, and the limitations period begins to run, at the time the unlawful conduct ceases." *Id.* (citing *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) (holding that a § 1983 action brought by a former mental patient for continuous civil confinement without psychiatric treatment did not accrue until the patient was released), *vacated on other grounds by O'Connor v. Donaldson*, 422 U.S. 563 (1975)). "The critical distinction in continuing violation analysis . . . is whether the plaintiff complains of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." *Id.* (internal quotation marks and alterations omitted).

Hutchinson alleges that he was placed in solitary confinement solely because of his CPAP machine, that this placement was done for the convenience of jail personnel rather than for a disciplinary or behavioral reason, that the conditions of solitary confinement (constant lights, limited showers, limited exercise and activities, and limited contact with other inmates) caused him to suffer a severe mental decline, that the Nurse Defendants observed his mental decline on a daily basis and knew that it was directly related to the conditions of his confinement, and that, despite this knowledge, the Nurse Defendants intentionally failed and refused to take any steps to address the conditions of his confinement or to have those conditions changed. Hutchinson was instead housed in

solitary confinement for the entire length of his incarceration at the County Jail—approximately eight months.

The undersigned finds these allegations sufficient to demonstrate a continuing violation of Hutchinson's rights. Critically, Hutchinson is not complaining of the present consequences of a one-time violation of his rights, despite the Nurse Defendants' misplaced protestations that Hutchinson's initial placement in solitary confinement on September 12, 2014, and their subsequent failure to address the conditions of his confinement on February 14, 2015 were one-time, discrete injuries that started the limitations clock running. Hutchinson is instead complaining that the Nurse Defendants violated his rights each day they acquiesced in his solitary confinement, despite knowing the devastating effects it was having on his mental health, and still took no action to have the conditions of his confinement changed. Complaints of daily and continuing violations of one's rights, including a defendant's knowledge of the need to provide medical care and refusal to provide that care, are continuing violations for statute-of-limitations purposes. *See Baker*, 484 F. App'x at 293 (explaining that "an allegation of a failure to provide needed and requested medical attention constitutes a continuing tort" and holding that the failure to provide medical attention for plaintiff's ongoing fungal infection was a continuous injury) (internal quotation marks omitted)); *Smith v. Shorstein*, 217 F. App'x 877, 881 (11th Cir. 2007) (holding that a plaintiff's continued incarceration after his sentence expired was a continuing violation that did not end until he was released from prison); *Robinson*, 327 F. App'x at 819–20 (recognizing that the failure to treat a hernia condition was a continuing violation until hernia surgery was performed and that

continuing to expose the plaintiff to scabies was a continuing violation until he was removed from the scabies source); *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1119 (M.D. Ala. 2016) ("[I]t would be nonsensical . . . to conclude that once some harm has occurred, a prisoner must bring a claim within a certain period of time, even though the conduct of the defendants that is creating the risk continues unabated."); *Brown v. Roberts*, 2010 WL 1258028, at *1–2 (M.D. Ga. Mar. 26, 2010) (explaining that the "[r]efusal to provide medical treatment has been held to constitute a continuing violation" and holding that a doctor's failure to order appropriate medical treatment and to notify officials that the plaintiff should not be exposed to extreme heat because of his medical conditions was a continuing violation that did not end until the plaintiff was transferred to another prison).

In this case, the continuing violations of Hutchinson's rights did not end until he was transferred from solitary confinement in the County Jail to the City Jail on April 28, 2015.[6]  That is the earliest date on which the limitations period for his § 1983 deliberate indifference claim began to run, and Hutchinson had two years from that date—or until April 28, 2017—to file his deliberate indifference claim against the Nurse Defendants. Since he filed his lawsuit on March 29, 2017, within the April 28 deadline, the undersigned concludes that his § 1983 deliberate indifference claim against the Nurse Defendants is timely.[7]

---

[6] The Nurse Defendants argue that the continuing violation doctrine should not apply to Hutchinson's § 1983 deliberate indifference claim against them because he has not alleged any violations that occurred within the statutory period (March 29, 2015 to March 29, 2017).  This argument is not supported by the allegations in the amended complaint, however.  Hutchinson alleges that the Nurse Defendants were aware of his declining mental health and that it was caused by the conditions of his confinement from at least October 2014 until the time he was transferred to the City Jail on April 28, 2015.  Therefore, Hutchinson has alleged violations of his rights that occurred during the statutory period.

[7] Hutchinson also argues that, to the extent the court finds his § 1983 deliberate indifference claim against

###### 2.    *Sufficiency of the Amended Complaint*

The Nurse Defendants also seek dismissal of Hutchinson's § 1983 deliberate indifference claim against them on the basis that the amended complaint is an impermissible "shotgun" pleading and that it fails to state a plausible claim against them upon which relief can be granted.  The undersigned is not persuaded by either argument and, therefore, concludes that the Nurse Defendants' motions to dismiss on these grounds should be denied.

Complaints that violate either Rules 8(a)(2) or 10(b) of the Federal Rules of Civil Procedure "are often disparagingly referred to as shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1331 n.10 (11th Cir. 2015) (internal quotation marks omitted).  "Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief[.]" *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (internal citations omitted) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).  "A complaint is considered a shotgun pleading where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (quoting *Anderson v. Dist. Bd. of Trustees of C. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).  "A shotgun pleading is in no sense the short and plain statement of the claim that Rule 8 requires." *Id.*

The Nurse Defendants argue that Hutchinson's amended complaint is an

---

the Nurse Defendants untimely and not a continuing violation of the law, this claim should still be allowed to proceed because the statute of limitations was equitably tolled.  Because the undersigned finds that Hutchinson suffered a continuing violation of his rights, the court need not determine whether equitable tolling applies to his deliberate indifference claim against the Nurse Defendants. *Robinson*, 327 F. App'x at 819 ("Because Robinson suffered a continuing violation of his right to adequate medical care regarding his hernia and scabies, we need not determine whether equitable tolling applies to those claims.").

impermissible shotgun pleading because he refers to the Nurse Defendants collectively, often by differing names, and because he does not clearly articulate factual allegations isolating how each individual defendant was deliberately indifferent to his serious medical needs.  There is no question that the amended complaint could have been more clearly pleaded.  Indeed, the amended complaint repeatedly refers to "QCHC personnel," "QCHC nursing personnel," the "individual QCHC defendants," and "QCHC medical personnel," often interchangeably, with Hutchinson making no effort to define the defendants who comprise these collective groups.  Moreover, the amended complaint asserts "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"—another telltale sign of a shotgun pleading. *Weiland*, 792 F.3d at 1321.

Still, while these mistakes may lead to some confusion, they are not sufficiently egregious to warrant dismissal of Hutchinson's amended complaint as an impermissible shotgun pleading.  Although Hutchinson does not define "QCHC personnel," "QCHC nursing personnel," the "individual QCHC defendants," and "QCHC medical personnel," the undersigned finds that the amended complaint, when viewed as a whole, makes it sufficiently clear that Hutchinson's references to these collective groups include the individual nurse defendants.  Further, while the amended complaint perpetuates the unnecessarily confusing and arcane practice of attorneys in this and other districts adopting and incorporating "by reference" all preceding allegations of a complaint into each successive count, when viewing the allegations in each count of Hutchinson's amended complaint as a whole, including the sole count against the Nurse Defendants, the

undersigned does not find these allegations so unclear or lacking in specificity as to make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson*, 77 F.3d at 366.  Hutchinson identifies the defendants made the subject of the majority of the allegations, albeit collectively, and he also clearly specifies which claims are asserted against which defendants.  Thus, the undersigned will not recommend the dismissal of Hutchinson's amended complaint as an impermissible shotgun pleading.

The amended complaint also states a plausible claim for relief against the Nurse Defendants.  A complaint need not set forth detailed factual allegations, but it must articulate more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Hutchinson must instead allege sufficient facts to render his claim "plausible on its face." *Id.* at 570.  The undersigned finds that Hutchinson has met this burden.

"The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from deliberate indifference to their serious medical needs, and their claims are subject to the same scrutiny as medical care claims under the Eighth Amendment." *Murphy v. Warren*, 2015 WL 363023, at *7 (N.D. Ga. Jan. 27, 2015) (citing *Mann v. Taser, Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009)); *see also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  To prove deliberate indifference to a serious medical need, including claims for inadequate medical care, Hutchinson must show a serious medical need, the Nurse Defendants' deliberate indifference to that need, and causation between the Nurse Defendants' indifference and his injury. *Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d

1272, 1279 (11th Cir. 2017); *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

The Nurse Defendants take issue with Hutchinson's amended complaint because the factual allegations, at least with respect to the deliberate indifference claim against them, "are more aptly categorized as unsubstantiated conclusions asserted against multiple defendants, which fail to describe with any level of specificity which Defendant did what act or omission." Doc. 74 at 30. More specifically, the Nurse Defendants argue that Hutchinson's deliberate indifference claim "is devoid of any factual content showing *what* each individual knew, *when* they knew it, and *what* they did in response." Doc. 74 at 32. These flaws, according to the Nurse Defendants, mandate dismissal under Rule 12(b)(6).

While the undersigned acknowledges that some of the allegations of the amended complaint may not be as specific as the Nurse Defendants would prefer, they survive Rule 12(b)(6) review. "To specifically establish the deliberate indifference [component, Hutchinson] must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence."[8] *Dang*, 871 F.3d at 1280. "Subjective knowledge of the risk requires that the defendant 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[8] For a deliberate indifference claim to survive Rule 12(b)(6) review, a plaintiff must also plausibly plead a "serious medical need." "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Dang*, 871 F.3d at 1280 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243). Hutchinson and the Nurse Defendants do not meaningfully dispute whether Hutchinson plausibly alleges a serious medical need, and even if they had, the court assumes that his allegations that the conditions of his confinement caused him to suffer a severe mental deterioration are sufficient to state an objectively serious medical need for purposes of a Fourteenth Amendment deliberate indifference claim. *See Harris v. S. Health Partners, Inc.*, 2013 WL 2387740, at *5 (M.D. Ga. May 30, 2013) (citing *Goebert*, 510 F.3d at 1326) (establishing that a serious medical need is an "objective component" of a deliberate indifference claim).

he [or she] must also draw the inference.'" *Id.* (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099–1100 (11th Cir. 2014)).

"An official disregards a serious risk by more than mere negligence 'when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate.'" *Id.* (quoting *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009)).   Deliberate indifference to a serious medical need can also be shown through delayed treatment for serious and painful injuries and grossly incompetent or inadequate care that shocks the conscience or is intolerable to fundamental fairness. *Kelley v. Owens*, 2008 WL 313108, at *4 (M.D. Ala. Feb. 1, 2008) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988); and *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

A motion to dismiss can be granted pursuant to Rule 12(b)(6) only if Hutchinson's amended complaint, with all factual allegations accepted as true, fails to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 545.   The amended complaint before the court does not meet this standard.   The crux of Hutchinson's claim is that his solitary confinement caused him to suffer a severe and ongoing mental deterioration, that the Nurse Defendants knew of his mental deterioration and that it was caused by the conditions of his confinement, and that, despite this knowledge, they intentionally and deliberately failed and refused to take any action to have the damaging conditions of his

confinement changed.  Assuming that Hutchinson was suffering a serious medical need during his confinement at the County Jail,[9] the factual allegations of the amended complaint permit the court to "draw the reasonable inference that the [Nurse Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662.

Indeed, with respect to the elements of a § 1983 deliberate indifference claim, the undersigned finds that Hutchinson adequately alleges that the Nurse Defendants had subjective knowledge of the risks that extended periods of solitary confinement may have on an individual's mental health.  Hutchinson alleges that each individual nurse defendant came into contact with him multiple times a week, if not daily, and personally observed his deterioration; that each individual nurse defendant discussed his deteriorating condition with others, evidencing their subjective knowledge of his deterioration, and were "well aware" of his deterioration by October 2014; and that, after February 14, 2015, each individual nurse defendant reviewed his jail medical records, including a February 14th entry that connected his mental deterioration with the conditions of his confinement, and were subjectively aware of his deteriorating mental condition and that it was caused by his solitary confinement.

The undersigned also finds that Hutchinson adequately alleges that the Nurse Defendants disregarded the risk of harm caused by his solitary confinement by conduct that surpasses mere negligence.  Specifically, Hutchinson alleges that each individual nurse defendant knew that the conditions of his confinement could and were causing his mental deterioration, that they were concerned enough to discuss Hutchinson's declining mental

---

[9] *See supra* note 8.

health with other correctional officers and doctors, that they each personally observed his mental deterioration, and that notwithstanding this knowledge none of them took any action to have the conditions of his confinement changed, including having him removed from a solitary cell.  This alleged conduct by the Nurse Defendants—personally observing Hutchinson's mental decline, knowing that it was caused by the conditions of his confinement and still deliberately failing or refusing to obtain medical treatment for him or to take any action to have him removed the solitary conditions in which he was housed for almost eight months—plausibly states a § 1983 deliberate indifference claim. Accordingly, for the reasons stated above, the undersigned RECOMMENDS that the Nurse Defendants' motions to dismiss Hutchinson's § 1983 deliberate claim against them be DENIED.

**D.     Motion to Dismiss QCHC and Physician Defendants**

Hutchinson also asserts a deliberate indifference claim against the Physician Defendants and QCHC.  In response, these defendants filed a joint motion to dismiss the claims against them on the same Rule 12(b)(6) grounds as those raised by the Nurse Defendants.  Having considered the parties' arguments, the undersigned finds that these defendants' motion to dismiss should be granted in part and denied in part, as explained below.

### *1.     Statute of Limitations*

The first argument raised by the Physician Defendants and QCHC is that Hutchinson's claim against them should be dismissed as untimely.  In fact, they raise the same timeliness argument as the Nurse Defendants—that the Physician Defendants and

QCHC (through the Physician Defendants) were aware of Hutchinson's severe mental decline and its cause by October 2014 or February 14, 2015, at the latest; that if the Physician Defendants and QCHC were aware of his severe mental deterioration and its cause by those dates, then Hutchinson must have also been aware of his mental decline by that same time because these defendants cannot know something about Hutchinson that he himself does not know; that, due to this knowledge, Hutchinson had two years from February 14, 2015—or by February 14, 2017, at the latest—to file his § 1983 deliberate indifference claim against the Physician Defendants and QCHC; and that since his lawsuit was not filed until March 29, 2017, his deliberate indifference claim against them should be dismissed as untimely.

The undersigned finds the timeliness arguments raised by QCHC and the Physician Defendants as unpersuasive as those raised by the Nurse Defendants and for the same reasons. For brevity's sake, the undersigned adopts those reasons, which apply with equal force here, without repeating them in full. Rather, the undersigned simply reiterates that, like Hutchinson's deliberate indifference claim against the Nurse Defendants, it is not "facially apparent" from the allegations of the amended complaint that his deliberate indifference claim against the Physician Defendants and QCHC is untimely. *Baker*, 484 F. App'x at 292. Moreover, he adequately alleges a continuing violation of the law with respect to his deliberate indifference claim against these defendants, salvaging any untimely allegations.[10] Accordingly, for these reasons, the undersigned concludes that

---

[10] Again, because the undersigned finds that Hutchinson adequately alleges a continuing violation of the law with respect to his § 1983 deliberate indifference claim against QCHC and the Physician Defendants, Hutchinson's equitable tolling argument need not be addressed. *See supra* note 7.

Hutchinson's § 1983 deliberate indifference claim against QCHC and the Physician Defendants is not barred by the statute of limitations.

### 2. *Sufficiency of the Amended Complaint*

#### a. QCHC

Although unclear, the court presumes that Hutchinson is attempting to assert a § 1983 deliberate indifference claim against QCHC in addition to the individual defendants.  While neither party materially disputes that Hutchinson is intending to assert such a claim, there is some confusion over the precise theory of liability on which this claim is based.  Indeed, the parties' briefing illustrates a dispute over whether Hutchinson is asserting a deliberate indifference claim against QCHC based on a policy, custom, or practice of the company or on a final policymaker theory of liability.  For the reasons that follow, the undersigned finds that Hutchinson's amended complaint attempts to assert a § 1983 deliberate indifference claim against QCHC based solely on a final policymaker theory of liability and that this claim does not survive Rule 12(b)(6) review.

QCHC is a private entity, but when a private entity "'contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state' and 'becomes the functional equivalent of the municipality' under section 1983." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)).  Hutchinson alleges that QCHC was contractually obligated to provide constitutionally adequate medical care to inmates at the County Jail, and QCHC does not dispute this allegation or that it is amendable to suit under § 1983. Docs. 70 at ¶ 10 & 76.  Still, while QCHC may

be subject to § 1983, "'[l]iability under § 1983 may not be based on the doctrine of respondeat superior.'" *Griffin v. City of Brundidge*, 2005 WL 3272461, at *2 (S.D. Ga. Nov. 30, 2005) (quoting *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 659 (1978).  Its liability "instead, must rest of the doctrine of municipal liability." *Harris v. S. Health Partners, Inc.*, 2013 WL 2387740, at *8 (M.D. Ga. May 30, 2013).

Under this framework, to state a § 1983 claim against QCHC, Hutchinson "must identify a specific deprivation of federal rights *and* the local [entity's] policy or custom that caused the deprivation of federal rights." *Chaney v. Fayette Cnty. Pub. Sch. Dist.*, 977 F. Supp. 2d 1308, 1318 (N.D. Ga. 2013) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397, 404 (1997)).  "A plaintiff can satisfy the policy or custom requirement by showing [his] constitutional violations resulted from one of the following: (1) an express policy of the local government; (2) a custom or practice so well-settled and pervasive it assumes the force of law; or (3) the actions of an official with final policymaking authority." *Id.* (citing *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966 (11th Cir. 2002); *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000)).

This is the point at which the parties diverge on this claim.  QCHC argues that Hutchinson has not alleged any policy or custom sufficient to state a plausible § 1983 deliberate indifference claim, but its briefing conflates the methods by which this element can be established and also fails to address the final policymaker theory of liability in any meaningful way.  Hutchinson, on the other hand, is unequivocal on this issue—"Plaintiff's

claim against QCHC is based on a final policymaker theory"—and the court will not read into the amended complaint claims that Hutchinson has clearly renounced. Doc. 84 at 8. Accordingly, the undersigned finds that Hutchinson is asserting a § 1983 deliberate indifference claim against QCHC based solely on a final policymaker theory of liability.[11]

"Municipal liability may be based on a single decision by a municipal official who has final policymaking authority." *Chaney*, 977 F. Supp. 2d at 1319 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Indeed, "a local governmental body may be subject to § 1983 liability where the action alleged to have caused the particular constitutional injury was taken by one having final policymaking authority with respect to the action." *Cuesta*, 2000 WL 33174398, at *5. Moreover, "[f]or an official to have policymaking authority, his or her decisions must be final and not subject to review." *Barteet v. Eismann*, 2013 WL 5236640, at *2 (S.D. Fla. Sept. 17, 2013).

The allegations in Hutchinson's amended complaint are not sufficient to state a plausible § 1983 deliberate indifference claim against QCHC under a final policymaker theory of liability. There is no dispute that Hutchinson alleges that Drs. Bates and Kern were final policymakers for QCHC. Hutchinson specifically alleges that Dr. Bates was the owner, founder, and CEO of QCHC; that Dr. Kern was QCHC's corporate medical director; and that they were both final policymakers for QCHC during the relevant time period. Doc. 70 at ¶ 11.

However, the amended complaint does not allege that their decisions were not

---

[11] With this finding, when considering the sufficiency of Hutchinson's § 1983 deliberate indifference claim against QCHC, it is unnecessary for the court to analyze whether Hutchinson adequately alleges an express policy or a custom or practice of QCHC so well-settled and pervasive that it assumes the force of law.

subject to review.  More critically, while Hutchinson alleges generically that Drs. Kern and Bates had final policymaking authority, he does not allege the actions, conduct, or areas over which they had such authority.  To establish § 1983 liability against a private entity like QCHC based on a final policymaker theory of liability, "the official 'must . . . be responsible for establishing final [corporate] policy respecting . . . [the challenged] activity.'"  *Chaney*, 977 F. Supp. 2d at 1319 (quoting *Pembaur*, 475 U.S. at 482–83). Hutchinson does not allege what final policymaking authority Drs. Kern and Bates had with respect to QCHC's treatment of inmates housed in similar conditions or with similar medical conditions.  In fact, the amended complaint is completely silent on the scope of Drs. Kern and Bates's final policymaking authority for QCHC and certainly does not allege that either Dr. Kern or Dr. Bates had final policymaking authority over an inmate's housing or the specific conditions of an inmate's confinement.  The most Hutchinson alleges is that Drs. Kern and Bates were final policymakers for QCHC.  Based on the paucity of these allegations, the undersigned cannot find a plausible causal connection between the actions of Drs. Kern and Bates, as final policymakers, and the constitutional deprivation alleged here. *See Harris*, 2013 WL 2387740, at *8 ("'[T]he alleged policymaker must have final policymaking authority with respect to the action alleged to have caused the particular constitutional or statutory violation.'" (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996))).   For these reasons, the undersigned RECOMMENDS that QCHC's motion to dismiss Hutchinson's § 1983 deliberate indifference claim against it for failure to state a claim be GRANTED and that this claim be DISMISSED WITH PREJUDICE

against QCHC.[12]

### b.    Physician Defendants

As the Physician Defendants correctly point out, it is unclear whether Hutchinson is asserting a § 1983 supervisory liability claim against Drs. Bates and Kern or only individual liability claims. A careful review of the amended complaint does not suggest that Hutchinson is attempting to assert a supervisory liability claim against Drs. Bates or Kern, and his reply brief does not specifically address this issue. Therefore, the undersigned RECOMMENDS that, to the extent the amended complaint attempts to assert a § 1983 supervisory liability claim against Drs. Bates and Kern, the Physician Defendants' motion to dismiss that claim be GRANTED and any supervisory liability claim against these defendants be DISMISSED WITH PREJUDICE.

This means that the only remaining claim against the Physician Defendants is for individual liability under § 1983 for their deliberate indifference to Hutchinson's serious medical needs. As with the statute of limitations, the Physician Defendants make essentially the same arguments as the Nurse Defendants for dismissal of these claims on Rule 12(b)(6) grounds, and the undersigned finds these arguments as unavailing as the Nurse Defendants' arguments and for the same reasons. Again, since those reasons have already been discussed in full, the undersigned simply adopts them here, reiterating that, assuming Hutchinson had a serious medical need,[13] the allegations in the amended complaint permit the undersigned to "draw the reasonable inference that the [Physician

---

[12] Hutchinson requests leave to amend his deliberate indifference claim against QCHC to state this claim more clearly, but this request is DENIED, as he has already had two attempts to state this claim properly and has failed to do so.

[13] *Supra* note 8.

Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662.  Hutchinson adequately alleges that the Physician Defendants had subjective knowledge of the risks that extended periods of solitary confinement can have on an individual's mental health and disregarded those risks by conduct that is more than mere negligence.  Specifically, he alleges that the Physician Defendants had multiple contacts with him, personally observed his mental deterioration and discussed it with the Nurse Defendants during and after October 2014, were aware that his mental deterioration was caused by the conditions of his confinement, and, despite this knowledge, intentionally and deliberately refused or failed to address the conditions of his confinement or to have those conditions changed.  Similar allegations were enough to state a plausible § 1983 deliberate indifference claim against the individual nurse defendants, and they are enough here.  For these reasons, the undersigned RECOMMENDS that the Physician Defendants' motion to dismiss Hutchinson's § 1983 deliberate claim against them be DENIED.

## E.    Motion to Dismiss the Sheriff Defendants[14]

Hutchinson asserts a number of claims against either Cunningham in his official capacity only or the Sheriff Defendants in their individual capacities, and the Sheriff Defendants have moved to dismiss all of those claims.  For the reasons that follow, the undersigned finds that all of Hutchinson's claims against the Sheriff Defendants individually and Cunningham in his official capacity should be dismissed and that

---

[14] The undersigned has already recommended the dismissal of Hutchinson's claims against Marshall for failure to comply with Federal Rule of Civil Procedure 25(a).  Therefore, any references to the "Sheriff Defendants" from this point forward within this recommendation refer to Cunningham, Murphy, Palmer, Robinson, and Turner, collectively, and the discussion of the Sheriff Defendants' motion to dismiss is limited to those defendants as well.

Hutchinson's request for declaratory and injunctive relief should be dismissed.

### 1.    Request for Declaratory and Injunctive Relief

As a threshold matter, the undersigned agrees with the Sheriff Defendants' contention that Hutchinson's request for declaratory and injunctive relief should be dismissed.   "Prisoners' claims for injunctive or declaratory relief regarding prison conditions generally become moot when the prisoner transfers to another prison." *Owens v. Sec'y, Fla. Dep't of Corrs.*, 602 F. App'x 475, 476 (11th Cir. 2015) (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)).   "There is a narrow exception to the doctrine of mootness when a challenged action is capable of being repeated and when it evades review, but it only applies when: '(1) there is a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration.'" *Id.* (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)).

Hutchinson's request for declaratory and injunctive relief is moot because it stems from injuries resulting from the conditions of his confinement at a prison in which he is no longer incarcerated. *See id.* ("Here, we conclude that Owens's claims set forth in his initial complaint are moot since his initial complaint requested injunctive relief concerning conditions in a prison at which he is no longer incarcerated.").   Indeed, the amended complaint makes clear that Hutchinson is no longer incarcerated at the County Jail and that the actions challenged here are specific to that particular jail.   Moreover, Hutchinson has not demonstrated that the challenged actions fall within the narrow exception to the

mootness doctrine.  In fact, Hutchinson does not address the Sheriff Defendants' motion to dismiss his request for injunctive and declaratory relief at all.  Accordingly, for these reasons, the undersigned RECOMMENDS that the Sheriff Defendants' motion to dismiss Hutchinson's request for declaratory and injunctive relief be GRANTED and that this request for relief be DISMISSED AS MOOT as to all defendants.[15] *See Anderson*, 604 F. App'x at 814 n.1.

## 2.    *Consideration of Materials Outside the Pleadings*

With their motion-to-dismiss filings, the Sheriff Defendants submitted several documents as exhibits, including excerpts from Hutchinson's jail medical records and filings from his federal criminal case proceeding. Docs. 77 & 92-1–2.  Although these documents are not part of the amended complaint, the Sheriff Defendants argue that the court can still consider them without converting their motion to dismiss into a motion for summary judgment because the documents are central to Hutchinson's claims.

"[A] court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id.* While the court may take judicial notice of prior court filings, such as the filings in Hutchinson's federal criminal proceeding, it is not clear that all of the jail medical records

---

[15] In light of this recommendation, the undersigned will not address the Sheriff Defendants' other proffered grounds for dismissing Hutchinson's claim for declaratory and injunctive relief.

submitted by the Sheriff Defendants are central to Hutchinson's claims against them. Moreover, Hutchinson disputes the authenticity of those records. *See* Doc. 85 at 3–4. For these reasons, the court will not consider the extrinsic documents submitted by the Sheriff Defendants in resolving their motion to dismiss, nor will the court convert their motion to dismiss into one for summary judgment. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

### 3.   *Deliberate Indifference Claim Against the Sheriff Defendants*

In addition to the QCHC defendants, Hutchinson also alleges that the Sheriff Defendants were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution. The Sheriff Defendants argue that this claim should be dismissed because it is untimely and they have qualified immunity. For the reasons that follow, the undersigned concludes that the Sheriff Defendants' motion to dismiss Hutchinson's § 1983 deliberate indifference claim should be granted.

### a.   **Statute of Limitations**

The Sheriff Defendants make the same statute-of-limitations arguments that the QCHC defendants made, namely, that Hutchinson knew or had reason to know that the Sheriff Defendants were injuring him by October 2014 or February 14, 2015, at the latest; that he had two years from the latter of those dates—or by February 14, 2017, at the latest— to file his § 1983 deliberate indifference claim against them; and because he did not file his

lawsuit until March 29, 2017, his deliberate indifference claim should be dismissed as untimely.  Again, the court rejects this argument for the same reasons it rejected the QCHC defendants' statute-of-limitations arguments.  Since those reasons are discussed in detail above, they are adopted without being restated in full here.

Rather, the undersigned reiterates that it is not facially apparent from the amended complaint when Hutchinson knew or should have known that he had been injured by the Sheriff Defendants' deliberate indifference to his serious medical needs.  Indeed, there is no clear indication in the amended complaint when Hutchinson knew or should have known that his solitary confinement was causing his mental deterioration, and the court will not go so far as to presume that Hutchinson was or should have been aware of his injuries simply because the Sheriff Defendants were aware of them, particularly when Hutchinson was in a compromised mental state at the same time he is alleged to have become aware of his injury.  Moreover, even if it was facially apparent from the amended complaint that Hutchinson knew or should have known that the Sheriff Defendants were injuring him by February 14, 2015, at the latest, he adequately alleges a continuing violation of his rights, thereby salvaging any untimely allegations with respect to this claim.[16]

Indeed, Hutchinson alleges that, when the Sheriff Defendants placed him in a solitary cell on or around September 12, 2014, they knew that extended periods of time in solitary confinement posed a substantial risk of serious harm to inmates that would be

---

[16] Again, because the undersigned finds that Hutchinson adequately alleges a continuing violation of his rights with respect to his § 1983 deliberate indifference claims against the Sheriff Defendants, his equitable tolling argument will not be addressed. *See supra* note 7.

exacerbated by lack of exercise, limited contact with other inmates, and constant lights; that the Sheriff Defendants knew that Hutchinson's cell had lights that never turned off, limited access to outdoor recreation and other jail activities, and limited contact with other inmates; that the Sheriff Defendants placed Hutchinson in this cell despite its known risk of harm; that the Sheriff Defendants were informed on February 14, 2015, at the latest, by QCHC personnel that Hutchinson's mental health was deteriorating as a result of the conditions of his confinement; and that, despite this knowledge, they intentionally failed or refused to take any action to change the conditions of his confinement or to have him removed from a solitary cell.  As with the allegations against the QCHC defendants, the undersigned finds these allegations sufficient to allege a violation of Hutchinson's constitutional rights that was continuing rather than discrete.  Therefore, Hutchinson's deliberate indifference claim against the Sheriff Defendants survives these defendants' timeliness argument.

In fact, the only timeliness argument the Sheriff Defendants make that differs in any material way from those presented by the QCHC defendants is that Hutchison asked the Magistrate Judge in his federal criminal case to reconsider his detention in December 2014. This request, according to the Sheriff Defendants, proves that Hutchinson's criminal attorneys were aware of the damaging conditions of his confinement by December 2014, and therefore Hutchinson must have also been aware of their damaging effects by that same time.  The court is not persuaded by this argument and declines to impute to Hutchinson whatever knowledge his criminal defense attorneys may have had about the conditions of his confinement, especially when the Sheriff Defendants have articulated no relevant

authority that specifically sanctions such a result.  What is more, Hutchinson alleges that the effects of his solitary confinement began seriously to affect his mental health in October 2014, but his request for reconsideration of detention in his federal criminal case was not made until December 2014, well after his mental decline allegedly began.  Simply put, the court is not convinced that Hutchinson's detention proceedings have any effect on whether his § 1983 deliberate indifference claim against the Sheriff Defendants was timely filed.

Accordingly, for the reasons explained above, the undersigned finds that Hutchinson's § 1983 deliberate indifference claim against the Sheriff Defendants is not barred by the statute of limitations.

### b.     Qualified Immunity

In addition to the statute of limitations, the Sheriff Defendants contend that Hutchinson's § 1983 deliberate indifference claim against them in their individual capacities is due to be dismissed based on qualified immunity.  To determine if qualified immunity applies to a § 1983 claim, the court must follow a two-step analysis.[17]  "The first step is to determine 'whether the [defendant's] conduct amounted to a constitutional violation,' and the second step is to 'analyze[] whether the right violated was clearly established at the time of the violation.'"  *Harper*, 592 F.3d at 1233 (quoting *Lewis v. City*

---

[17] As a threshold matter, to be entitled to qualified immunity, defendants must first establish that the claims against them arise from action taken within the scope of the discretionary authority delegated to them by their employers. *See Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).  Only at that point will the burden move to the plaintiff to demonstrate the violation of a clearly established constitutional or statutory right.   In this case, there is no dispute that the Sheriff Defendants were acting within the scope of their discretionary authority when caring for inmates in their custody and control at the County Jail. Doc. 78. Therefore, the court will focus its analysis on whether Hutchinson adequately alleges that the Sheriff Defendants' conduct amounts to a constitutional violation and whether the right allegedly violated was clearly established at the time of the violation.

*of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  A court may decide these issues in either order, but to survive a qualified-immunity defense in this Circuit a plaintiff must satisfy both showings by meeting a "heightened pleading standard" that requires some factual detail. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017); *Harper*, 592 F.3d at 1233.

"To perform the first step of the qualified immunity analysis, [the court] must determine whether [Hutchinson] properly stated a 'personal participation' claim for deliberate indifference under the Fourteenth Amendment against [the Sheriff Defendants]." *Harper*, 592 F.3d at 1234.  To properly state such a claim, Hutchinson must allege "'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" *Id.* (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). Ultimately, to establish deliberate indifference that violates the Fourteenth Amendment, Hutchinson must allege that the Sheriff Defendants had (1) subjective knowledge of a risk of serious harm and (2) disregarded that risk (3) by conduct that is more than mere negligence. *Dang*, 871 F.3d at 1280.

At the second step of the qualified immunity analysis, "[w]hether a constitutional right was 'clearly established' at the time of the violation turns on whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006) (internal quotation marks omitted).  "We recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually

similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert*, 510 F.3d at 1330.

Applying this guidance to the present case, the undersigned concludes that the Sheriff Defendants are entitled to qualified immunity on Hutchinson's deliberate indifference claim because the amended complaint does not sufficiently allege specific facts demonstrating that the Sheriff Defendants' conduct amounted to a violation of Hutchinson's constitutional rights. As an initial matter, neither party argues that Hutchinson is asserting a deliberate indifference claim against the Sheriff Defendants in their capacities as supervisors.[18] Thus, the only type of deliberate indifference claim Hutchinson can be asserting against the Sheriff Defendants is one based on their personal participation in the violation of his constitutional rights. The court concludes that the allegations in the amended complaint are not sufficient to state such a claim.

---

[18] Even if Hutchinson was alleging a deliberate indifference claim against the Sheriff Defendants in their supervisory capacities, the Sheriff Defendants would still be entitled to qualified immunity on that claim. "'The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.'" *Letson v. Mitchell*, 2015 WL 1487731, at *9 (N.D. Ala. Mar. 30, 2015) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted)). Supervisory liability can be established only where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions. *Id.* There are three ways to establish a causal connection:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Harper*, 592 F.3d at 1236. As discussed herein, the amended complaint does not contain sufficient factual allegations that the Sheriff Defendants personally participated in the alleged unconstitutional conduct at issue here. Nor does the amended complaint allege any facts that would support a causal connection between the alleged violation of Hutchinson's constitutional rights and the Sheriff Defendants' actions. Therefore, even assuming Hutchinson alleged a deliberate indifference claim against the Sheriff Defendants in their supervisory capacities, they would be entitled to qualified immunity on that claim.

The factual allegations in the amended complaint with respect to the Sheriff Defendants are as follows: (1) the Sheriff Defendants decided that Hutchinson would be placed in a suicide watch cell to use his CPAP machine and required that he remain in this cell to continue to use his CPAP machine; (2) when Hutchinson was placed in solitary confinement, the Sheriff Defendants were aware that extended periods of solitary confinement presented a substantial risk of serious harm to inmates and that this harm would be exacerbated by lack of exercise and constant lights; (3) when Hutchinson was placed in solitary confinement, the Sheriff Defendants were aware that his cell had constant lights and limited access to outdoor recreation and other jail programs; (4) the Sheriff Defendants' decision to place Hutchinson in solitary confinement was made for their convenience; (5) before placing Hutchinson in solitary confinement, the Sheriff Defendants considered other options for dealing with his CPAP machine that would not require him to be housed in solitary confinement but still made the decision to segregate him; (5) by February 14, 2015, the "command staff defendants" were informed by QCHC medical personnel of Hutchinson's mental deterioration and that it was caused by the conditions of his confinement, but the "command staff defendants" still took no action to address the conditions of his confinement; and (6) the Sheriff Defendants acted with deliberate indifference to Hutchinson's mental deterioration and took no steps to change the conditions of his confinement despite knowing that the conditions of his confinement were causing him harm.

While these allegations may be long on quantity, they are short on the substance needed to state a plausible deliberate indifference claim against the Sheriff Defendants

based on their personal participation in the violation of Hutchinson's constitutional rights. Unlike the Nurse and Physician Defendants, who are alleged to have had repeated, if not daily, contact with Hutchinson during his incarceration at the County Jail and personally observed and acknowledged his mental deterioration, the amended complaint contains no allegations that any of the individual sheriff defendants had any contact with Hutchinson or personally observed his mental deterioration whatsoever.   In fact, the amended complaint contains no allegations that any of the individual sheriff defendants saw Hutchinson or interacted with him during his incarceration at the County Jail.

The amended complaint also lacks allegations demonstrating that each of the individual sheriff defendants had actual subjective knowledge that Hutchinson was experiencing a severe mental deterioration, that this deterioration was caused by the conditions of his confinement, and that his condition would worsen if left untreated.  The only allegation that speaks to the Sheriff Defendants' subjective knowledge of a serious risk of harm to Hutchinson is the allegation that the "command staff defendants" were informed by "QCHC medical personnel" by February 14, 2015, at the latest, that Hutchinson's mental health was deteriorating and that this deterioration was caused by the conditions of his confinement.  This allegation, however, lacks the level of specificity needed to meet the heightened pleading standard applicable to § 1983 cases where qualified immunity is at issue.  Indeed, this allegation does not clearly identify the individuals who comprised the command staff defendants or QCHC medical personnel, nor does it contend that any of the specific individual sheriff defendants was informed of Hutchinson's declining mental condition and its cause, that they actually knew or personally observed

46

Hutchinson's mental condition at any point during his incarceration, or that any of the specific individual sheriff defendants had actual subjective knowledge that Hutchinson needed medical treatment and to be removed from solitary confinement and that this need was being deliberately delayed, refused, or ignored.  Each individual defendant must be judged separately on the basis of what he or she knows, and these allegations fall short of this required specificity. *See Dang*, 871 F.3d at 1280 ("Imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.") (internal quotation marks omitted).

Hutchinson relies on *Harper v. Lawrence County, Alabama* to contend that his deliberate indifference allegations are "more than sufficient under controlling law" to overcome qualified immunity, but his reliance is misplaced.  In that case, the Eleventh Circuit held that the complaint sufficiently alleged that jailers had actual knowledge that a detainee was suffering alcohol withdrawal and required medical attention when those defendants were alleged to have reported that the detainee was displaying erratic behavior and other inmates were alleged to have informed those same jailers that the detainee was acting strangely, losing his balance, and had urinated on himself. *Harper*, 529 F.3d at 1234. The allegations in this case are simply not the same.  There are no allegations that any of the individual sheriff defendants reported Hutchinson's declining mental health to anyone at the County Jail or that they were specifically informed by other inmates of his declining mental health.  At most, Hutchinson alleges that the command staff defendants were informed "regarding plaintiff's severe deterioration and that the deterioration was caused by the inhumane conditions of plaintiff's confinement," but even if the court were to

assume that the command staff defendants are comprised of the individual sheriff defendants, this allegation does not specify exactly what each individual sheriff defendant was told "regarding" plaintiff's mental condition or the damaging conditions of his confinement. Doc. 70 at ¶ 62; *see Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) ("The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.").

In sum, because the allegations in the amended complaint do not plausibly allege that any of the Sheriff Defendants had actual subjective knowledge of a risk of serious harm to Hutchinson based on the conditions of his confinement, the amended complaint fails to state a personal participation claim against the Sheriff Defendants, and they are therefore entitled to qualified immunity on Hutchinson's deliberate indifference claim against them. *See Letson v. Mitchell*, 2015 WL 1487731, at *7–9 (N.D. Ala. Mar. 30, 2015). Accordingly, the undersigned RECOMMENDS that the Sheriff Defendants' motion to dismiss Hutchinson's § 1983 deliberate indifference claim against them based on qualified immunity be GRANTED and that this claim be DISMISSED WITH PREJUDICE.[19]

---

[19] Because the undersigned finds that the amended complaint does not adequately allege that the Sheriff Defendants' conduct amounts to a violation of Hutchinson's constitutional rights, the undersigned need not address whether the right allegedly violated was clearly established at the time of the violation. *See Gaines*, 871 F.3d at 1208.

**4.**     *Due Process Claims Against the Sheriff Defendants*

In addition to a deliberate indifference claim, Hutchinson also asserts two separate claims against the Sheriff Defendants for violation of his Fourteenth Amendment procedural and substantive due process rights through 42 U.S.C. § 1983.  For the reasons that follow, the undersigned finds that the motion to dismiss these claims is due to be granted.

**a.**     **Procedural Due Process Claim**

Hutchinson's procedural due process claim is premised on his allegation that the Sheriff Defendants made the decision to house him in a solitary medical cell, and did in fact house him in a solitary medical cell, without providing him with a hearing or other process first.  Specifically, Hutchinson alleges that "[t]he jail has policies and procedures related to the use of solitary confinement as a disciplinary measure" and that "[t]hese policies and procedures provide for an inmate to have a hearing prior to the imposition of solitary confinement as punishment," but he "did not receive a hearing." Doc. 70 at ¶¶ 32–34.

Hutchinson's procedural due process claim is barred by the statute of limitations.  As discussed above, the statute of limitations applicable to § 1983 claims in Alabama is two years, and these claims accrue, and the limitations period begins to run, when "facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Powell*, 643 F.3d at 1303; *Mullinax*, 807 F.2d at 716.  Hutchinson alleges that he was placed in a solitary cell on September 12, 2014, and that he was not provided a hearing or other process prior to this placement.  Based on

these allegations, the limitations period for Hutchinson's procedural due process claim began to run on September 12, 2014, at the latest, when he was placed in solitary confinement without a prior hearing. This means that Hutchinson had two years from September 12, 2014—or until September 12, 2016—to file his § 1983 procedural due process claim against the Sheriff Defendants. Since Hutchinson did not file his lawsuit until March 29, 2017, his § 1983 procedural due process claim against the Sheriff Defendants is untimely.

Moreover, unlike his deliberate indifference claim against the QCHC and Sheriff Defendants, the amended complaint does not adequately allege a continuing violation of Hutchinson's procedural due process rights such that this untimely claim can be saved. Placing Hutchinson in a solitary cell without first providing him with a hearing or other process was a discrete act that took place no later than September 12, 2014, and therefore, started the limitations clock on that date.

Hutchinson's equitable tolling argument also does not salvage this claim, as the amended complaint does not contain allegations sufficiently demonstrating that he is entitled to that relief. While Hutchinson correctly points to mental incompetency as a basis for equitable tolling, the amended complaint does not allege that he was suffering from a mental deterioration at the time he was placed in a solitary cell. To the contrary, the amended complaint alleges that Hutchinson's mental decline was caused by his solitary confinement; thus, it follows that this decline could not have happened until after he was placed in solitary confinement without a prior hearing. And Hutchinson presents no argument specifically rebutting this or the Sheriff Defendants' other arguments with

respect to the timeliness of his procedural due process claim.

However, even if Hutchinson's procedural due process claim was timely, the undersigned would still recommend its dismissal because the Sheriff Defendants are entitled to qualified immunity.  In *Anderson v. Chapman*, 604 F. App'x 810, 813 (11th Cir. 2015), the Eleventh Circuit held that a pretrial detainee's confinement to administrative segregation for non-punitive reasons does not violate due process because such segregation is ordinarily contemplated by a prison sentence.  The detainee in *Anderson* was awaiting trial on a number of sexual abuse charges involving children.  Because of the nature of those charges, jail personnel placed the detainee in administrative segregation to protect him from other inmates.  The Eleventh Circuit found that the detainee's placement was similar to the placement of anyone facing similar charges and that "[t]he placement was not for punishment; rather, it was done to ensure Anderson's safety and to minimize the risk of violence between inmates." *Id.*

Here, the allegations in the amended complaint do not plausibly allege that Hutchinson's placement in a solitary medical cell was for punishment; rather, they specifically allege that Hutchinson was placed in a solitary cell "solely for reasons related to the CPAP machine." Doc. 70 at ¶ 24.  Thus, like in *Anderson*, the allegations of the amended complaint do not implicate or plausibly allege a violation of Hutchinson's procedural due process rights.  What is more, even if the court assumed that Hutchinson was improperly denied a due process hearing, the amended complaint still does not allege that he ever requested a hearing, nor does it allege that each individual sheriff defendant was responsible for providing him with a hearing or that they personally participated in the

denial of that hearing.  For these reasons, the undersigned RECOMMENDS that the Sheriff

Defendants' motion to dismiss Hutchinson's § 1983 procedural due process claim be

GRANTED and that this claim be DISMISSED WITH PREJUDICE against these

defendants.

### b.     Substantive Due Process Claim

Hutchinson contends his confinement to a solitary cell by the Sheriff Defendants

amounted to improper "punishment" that violated his substantive due process rights.  This

claim, like Hutchinson's procedural due process claim, should be denied because it is

untimely and the Sheriff Defendants have qualified immunity.

Hutchinson's substantive due process claim is untimely for the same reasons his

procedural due process claim is untimely.  To the extent Hutchinson's confinement to a

solitary cell with constant lights and limited access to jail activities and other inmates

amounted to punishment, that punishment occurred when Hutchinson was placed in a

solitary cell on September 12, 2014.  Consequently, Hutchinson had two years from that

date—or until September 12, 2016—to file his § 1983 substantive due process claim

against the Sheriff Defendants.  Since Hutchinson did not file that claim until March 29,

2017, it is barred by the statute of limitations.

However, even if the court assumed that Hutchinson's substantive due process claim

was timely filed, like his procedural due process claim, the undersigned would recommend

the dismissal of this claim because the Sheriff Defendants are entitled to qualified

immunity.  "Due process requires that a pretrial detainee not be punished prior to a lawful

conviction." *Magluta*, 375 F.3d at 1273 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979);

*McMillian v. Johnson*, 88 F.3d 1554, 1564 (11th Cir. 1996), *amended by* 101 F.3d 1363 (11th Cir. 1996)). "However, the government may detain individuals to ensure their presence at trial and may subject them to the conditions and restrictions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Id.* (citing *Bell*, 441 U.S. at 536–37). "The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose." *Id.* (citing *Bell*, 441 U.S. at 538; *McMillian*, 88 F.3d at 1564). "Further, 'if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment[.]'" *Id.* (quoting *Bell*, 441 U.S. at 539).

Here, Hutchinson has not pleaded plausible facts to show that the dangerous conditions of his confinement were imposed for the purpose of punishment. To the contrary, Hutchinson's amended complaint alleges that (1) he was segregated from the general inmate population and placed in a suicide-watch cell "because of concerns related to the CPAP machine's alleged possible use as a weapon" (Doc. 70 at ¶ 18); (2) he "was placed in solitary confinement solely for reasons related to his CPAP machine" (Doc. 70 at ¶ 24); (3) he was required "to be housed in the suicide watch cell in order to receive" his CPAP machine (Doc. 70 at ¶ 27); (4) he was not placed in a solitary cell "for any disciplinary violation" (Doc. 70 at ¶ 35); and (5) the decision to place him in a solitary cell was "based on convenience to jail personnel" (Doc. 70 at ¶ 36). Even the body of Count III of Hutchinson's amended complaint, which asserts his substantive due process claim,

fails to allege clearly that the conditions of his confinement were imposed for the specific purpose of punishing him.

Hutchinson contends he adequately alleges that the conditions of his confinement were imposed for the purpose of punishment by pointing to averments in the amended complaint that (1) the conditions of his confinement were imposed "without a legitimate governmental reason and despite the availability of other, non-punitive options," (2) the "conditions of his confinement were inhumane and not rationally related to any legitimate governmental interest," and (3) the conditions of his confinement "constituted improper punishment." Doc. 70 at ¶¶ 39–40, 42. But, as the Sheriff Defendants point out, and the court agrees, these are bare, conclusory allegations that are not only unsupported by specific factual allegations in the amended complaint but are contradicted by the actual factual allegations, which demonstrate that Hutchinson was placed in a solitary medical cell not for punishment but solely because he needed to use a CPAP machine.

In *Kibwika v. Broward County Sheriff's Office*, 453 F. App'x 915, 919 (11th Cir. 2012), the Eleventh Circuit held that a pretrial detainee failed to state a plausible claim for relief when he provided no factual allegations which, if accepted as true, showed that jail officials imposed a daily 18-hour lockdown for the purpose of punishment. In reaching this conclusion, the *Kibwika* court found that the plaintiff's allegation that the defendants placed him "in a punitive-in-nature disciplinary segregation incarceration and confinement setting" was not sufficient to support his substantive due process claim because this allegation was simply a "legal conclusion that cannot factually support [the plaintiff's] claim for relief." *Id.* (citation omitted). The same can be said here. Hutchinson's

allegations that he was placed in a solitary cell for no legitimate purpose other than punishment are conclusory statements with no specific factual support, particularly when considering Hutchinson's express allegations that he was placed in a solitary cell solely for legitimate safety reasons related to his CPAP machine.

Hutchinson's reliance on *Magluta v. Samples*, 375 F.3d 1269 (11th Cir. 2004), does not salvage his substantive due process claim.  In *Magluta*, a district court dismissed a pretrial detainee's substantive due process claim on the basis that the detainee failed to allege sufficient facts showing that he was placed in administrative segregation for more than 500 days as punishment when the record reflected that "he and his co-defendants were under investigation for at least four separate escape plots." *Id.* at 1273–74.  The Eleventh Circuit reversed the district court's decision and reasoned that while it was reasonable for the district court to infer that the plaintiff was placed in administrative detention because of a legitimate concern about his escape risk, the complaint as a whole "[gave] rise to a reasonable inference that [his] placement in solitary confinement was for the purpose of punishment." *Id.* at 1275.  The Eleventh Circuit reached this conclusion based on the specific factual allegations contained the plaintiff's complaint demonstrating that his segregation was done for the purpose of punishment, including allegations that (1) he was ordered back to "the hole" in retaliation after his co-defendant initiated habeas corpus proceedings in another district, (2) he was treated more severely by prison officials the more he complained, (3) administrative detention was a pretext for indefinite solitary confinement, (4) the prison's concern about his escape risk was based on false and fabricated information without minimal indicia of reliability and was perpetrated via a

campaign of misinformation spread by two prison officials, (5) his harsh treatment was unlike the treatment of other pretrial detainees, even those in administrative segregation, and (6) he was transferred to the general population after initiating habeas corpus proceedings but was returned to solitary confinement two months later even though he presented no apparent security threat. *Id.* at 1274–75.  Unlike *Magluta*, this case simply does not present the same type of detailed factual allegations suggesting that Hutchinson was placed in a solitary medical cell solely for punishment or retaliation, or that his placement in a solitary medical cell was arbitrary, purposeless, and not related to a legitimate government interest.

In sum, Hutchinson has not demonstrated that his substantive due process claim against the Sheriff Defendants was timely filed.  Nor has he plausibly alleged that the Sheriff Defendants violated his substantive due process rights such that they cannot avail themselves of qualified immunity on this claim.  For these reasons, the undersigned RECOMMENDS that the Sheriff Defendants' motion to dismiss Hutchinson's § 1983 substantive due process claim be GRANTED and this claim be DISMISSED WITH PREJUDICE as to these defendants.

### 5.  *ADA and Rehabilitation Act Claims Against Cunningham*

The final claims to address are Hutchinson's claims against Cunningham in his official capacity for violations of the ADA and Section 504 of the Rehabilitation Act.  In essence, these claims allege that Cunningham denied Hutchinson a reasonable accommodation and discriminated against him because of his disability (sleep apnea) by requiring that he be housed in solitary confinement under "inhumane conditions,"

including constant lights and no access to exercise, the jail law library, or other jail programs. For the reasons that follow, the undersigned finds that both of these claims are due to be dismissed.

### a. ADA Claim

"Title II of the ADA provides that, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *McCauley v. Georgia*, 466 F. App'x 832, 835 (11th Cir. 2012) (quoting 42 U.S.C. § 12132). Private suits by individuals for money damages are authorized under Title II, and this section applies to prisoners in state correctional facilities. *Id.* (citing 42 U.S.C. § 12202); *Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (citing 42 U.S.C. § 12132; *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Odom v. Fla. Dep't of Corrs.*, 2014 WL 4079910, at *9 (N.D. Fla. Aug. 19, 2014). To state a claim under Title II of the ADA, a plaintiff must show

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Redding*, 557 F. App'x at 844 (citing *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Cunningham argues that the ADA claim against him for money damages is due to be dismissed based on sovereign immunity under the Eleventh Amendment to the United

States Constitution.[20]   An assertion of sovereign immunity essentially challenges the court's subject-matter jurisdiction. *See McCauley v. Ga. Superior Ct. in Bibb Cnty.*, 2011 WL 13176722, at *6 (N.D. Ga. Feb. 14, 2011).   Therefore, the undersigned must resolve Cunningham's claim of Eleventh Amendment immunity before addressing the merits of the underlying ADA claim. *Id.*

"The Eleventh Amendment prohibits a damages action by a private individual against a state (or state agency) in federal court, absent waiver or express congressional abrogation." *Odom*, 2014 WL 4079910, at *9 (citing *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765–66 (2002); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). "This bar also applies to suits against state officials sued for damages in their official capacity." *Redding*, 557 F. App'x at 844.   A state is not immune, however, "where Congress has (1) unequivocally expressed its intent to abrogate the states' immunity through a clear legislative statement, and (2) acted pursuant to a valid grant of constitutional authority." *Id.* (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73, 80 (2000)).

"In § 12202, Congress made clear its intent to abrogate states' immunity from suits brought under the ADA." *McCauley*, 466 F. App'x at 836 (citing *Tennessee v. Lane*, 541 U.S. 509, 518 (2004)).   That provision expressly provides that a "State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C.

---

[20] Because the undersigned has already recommended dismissal of Hutchinson's request for declaratory and injunctive relief, as discussed above, the only remaining requested relief is for money damages.

§ 12202.  However, while abrogation is permitted in the context of a Title II ADA claim, the full extent of that abrogation is not defined by a bright line.

As Hutchinson articulates in his response brief, *United States v. Georgia*, 546 U.S. 151 (2006), and its progeny are the guiding authorities for decisions involving abrogation of state immunity for claims brought by prisoners under Title II of the ADA.[21]  In *Georgia*, the Supreme Court considered whether a state prisoner could sue a state for money damages based on a claim that the conditions of his confinement violated his rights under Title II of the ADA. *Id.* at 153−55.  Declining to determine whether Title II validly abrogated sovereign immunity in prisoner suits generally, the Court instead held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159.  The Court then remanded the case for further proceedings. *Id.* at 159.

In remanding the case, however, the Court noted that the plaintiff's amended complaint could potentially assert Title II claims "premised on conduct that does *not* independently violate the Fourteenth Amendment." *Id.*  The Court concluded that, in such a context, the lower courts are best situated "to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as

---

[21] Although Hutchison does raise the *Georgia* standard in his response brief, this argument is vexing in its lack of development—the entire argument consists of only two pages in Hutchinson's response brief—and it provides the court with minimal guidance on a complicated issue.  Cunningham's rely brief fares no better, as he does not address Hutchinson's *Georgia* arguments at all.

such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* To resolve the third prong of the *Georgia* analysis, a district court should consider the tripartite congruence and proportionality inquiry contained in *City of Boerne v. Flores*, 521 U.S. 507 (1997), to determine whether abrogation would be deemed a valid exercise of Congressional power under § 5 of the Fourteenth Amendment.

Applying this precedent to the instant case, the undersigned concludes that Cunningham is immune under the Eleventh Amendment from Hutchinson's Title II ADA claim for money damages. To begin, Hutchinson's ADA claim is premised on the same allegations that support his § 1983 deliberate indifference claim, but the undersigned has already determined that Cunningham is entitled to qualified immunity on that claim because the factual allegations did not plausibly establish that he or any other Sheriff Defendant acted with deliberate indifference to his serious medical needs. Simply stated, the amended complaint does not plausibly allege that Cunningham's Title II violations simultaneously rise to the level of constitutional violations. Consequently, because Hutchinson has failed to demonstrate that the conduct underlying his ADA claim actually violated his constitutional rights, he is barred by the Eleventh Amendment from recovering money damages against Cunningham on this claim. *See Odom*, 2014 WL 4079910, at *10 (holding that, because the court previously determined that the individual jail defendants had not violated the plaintiff's constitutional rights, the Eleventh Amendment precluded plaintiff from recovering money damages against the Department of Corrections on his Title II ADA claim).

Moreover, it is clear from a review of Hutchinson's amended complaint that his Title II cause of action is premised solely on conduct that he claims to be an independent violation of the Fourteenth Amendment.  Thus, because Hutchinson does not allege or meaningfully argue that he has pleaded Title II violations that do not simultaneously rise to the level of a constitutional violation, it is unnecessary for the undersigned to proceed with the *Georgia* "case-by-case" analysis to determine whether Congress validly abrogated sovereign immunity for a Title II claim premised on conduct that violates the ADA but is not otherwise unconstitutional. *See Rylee v. Chapman*, 2008 WL 3538559, at *6 (N.D. Ga. Aug. 11, 2008) (reasoning that, because the plaintiff claims that all of the conduct at issue violated both the ADA and the Fourteenth Amendment and does not specify that any conduct violates the ADA but not the Constitution, and because the plaintiff did not materially address whether he can assert an ADA claim against the Sheriff in his official capacity for conduct that is not itself unconstitutional but still violates the ADA, the court need not conduct the *Georgia* analysis and instead may hold that the plaintiff did not meet his burden of proving that Congress has abrogated sovereign immunity for an ADA claim premised on conduct that violates the ADA but is not otherwise unconstitutional). Accordingly, for these reasons, the undersigned finds that Cunningham is entitled to Eleventh Amendment immunity on Hutchinson's ADA claim.

However, even if Cunningham was not immune to Hutchinson's ADA claim, the undersigned would recommend dismissal of this claim because it is time-barred.  As with his deliberate indifference and due process claims, Hutchinson's ADA claim is governed by a two-year statute of limitations. Ala. Code § 6-2-38(l); *Horsley v. Univ. of Ala.*, 564 F.

App'x 1006, 1008 (11th Cir. 2014) ("[F]or discrimination claims under Title II of the ADA and the Rehabilitation Act, which were both enacted prior to 1990, the applicable limitations period is governed by the most analogous state statute of limitations . . . [which] [i]n Alabama . . . is two years.") (internal citations omitted)).  "A limitations period begins to run when a cause of action accrues." *Horsley*, 564 F. App'x at 1008 (citing *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996)).  A cause of action ordinarily will not accrue, and thereby start the limitations clock running, until the plaintiff knows or should know that he suffered the injury that forms the basis of his complaint and who has inflicted the injury. *Id.* (citing *Chappell*, 340 F.3d at 1283).

The undersigned concludes that Hutchinson was aware, or should have been aware, that he had suffered the discrimination and unreasonable accommodation that forms the basis of his ADA claim and who inflicted that injury on or around September 12, 2014, when he was first placed in a solitary cell by the Sheriff Defendants.  It was at that time that he was segregated to a solitary cell, subjected to constant lights, and limited or totally restricted in his access to exercise, the law library, television, and other jail activities. Therefore, the limitations clock for Hutchinson's ADA claim began to run on September 12, 2014, meaning that he had until September 12, 2016 to file his ADA claim against Cunningham.  Because Hutchinson did not file that claim until March 29, 2017, and because he has not articulated sufficient grounds to establish a continuing violation or equitable tolling of the statute of limitations, his ADA claim is time-barred. *See C.S. v. Thomas*, 2015 WL 1513928, at *3 (N.D. Ala. Mar. 9, 2015) (explaining that the statute of limitations for ADA and Rehabilitation Act claims based on segregation of inmate with

HIV began to run at the time of segregation).

Accordingly, for the reasons stated above, the undersigned RECOMMENDS that the Sheriff Defendants' motion to dismiss Hutchinson's ADA claim against Cunningham be GRANTED and that this claim be DISMISSED WITH PREJUDICE as to this defendant.

### b.   Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  Court holdings addressing and deciding issues under the Rehabilitation Act are applicable to cases under the ADA and vice versa. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

Cunningham argues that, like Hutchinson's ADA claim, he also has Eleventh Amendment immunity with respect to his Rehabilitation Act claim.  The undersigned disagrees.  "The law in the Eleventh Circuit is that states accepting federal funding waive their Eleventh Amendment immunity." *Ginwright v. Dep't of Revenue for Ala.*, 2013 WL 1187943, at *3 (M.D. Ala. Mar. 21, 2013) (citing 42 U.S.C. § 2000d-7; *Garrett v. Univ. of Ala. at Birmingham*, 344 F.3d 1288, 1293 (11th Cir. 2003)).  Hutchinson adequately alleges the federal-funding requirement; therefore, Cunningham is not entitled to Eleventh Amendment immunity on Hutchinson's Rehabilitation Act claim.

That being said, the undersigned finds that this claim is still subject to dismissal

because it is untimely for the same reasons Hutchinson's ADA claim is untimely. Since those reasons are fully discussed above, the undersigned will simply adopt them without repeating them in full here. *See C.S.*, 2015 WL 1513928, at *3. Accordingly, for the reasons stated above, the undersigned RECOMMENDS that the Sheriff Defendants' motion to dismiss Hutchinson's Rehabilitation Act claim against Cunningham as untimely be GRANTED and that this claim be DISMISSED WITH PREJUDICE against this defendant.

## IV.  CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS as follows:

1.    Hutchinson's claims against the individual defendant identified in the amended complaint as "Dr. ____ White" be DISMISSED WITHOUT PREJUDICE for failure to perfect service and to provide proof of service in compliance with Rule 4 of the Federal Rules of Civil Procedure and for failure to prosecute.

2.    The motion to dismiss claims against Defendant D.T. Marshall (Doc. 72) be GRANTED, and Hutchinson's claims against Marshall be DISMISSED WITHOUT PREJUDICE pursuant to Rule 25(a) of the Federal Rules of Civil Procedure.

3.    The motions to dismiss claims against Defendants Daffany Abbington, Dionne Baker, Tiffany Clark, Sharon Smith, Teresa Varden, Michelle Beasley, Deborah Muse, and Kim Patterson (Docs. 73 & 100) be DENIED.

4.    The motion to dismiss claims against Defendants QCHC, Inc., Johnny Bates, Jerry Gurley, and Donald Kern (Doc. 75) be resolved as follows:

a.    The motion to dismiss be GRANTED to the extent Hutchinson asserts

a § 1983 deliberate indifference claim against QCHC and a supervisory liability § 1983 deliberate indifference claim against Drs. Bates and Kern, and those claims be DISMISSED WITH PREJUDICE; and

       b.    The motion to dismiss be DENIED in all other respects.

5.    The motion to dismiss claims against Defendants Derrick Cunningham, Kevin J. Murphy, Barbara Palmer, Wanda J. Robinson, and Melvin Turner (Doc. 77) be GRANTED, and, for the reasons stated in the recommendation, Hutchinson's claims against Derrick Cunningham, Kevin J. Murphy, Barbara Palmer, Wanda J. Robinson, and Melvin Turner be DISMISSED WITH PREJUDICE and his requests for declaratory and injunctive relief be DISMISSED AS MOOT as to all defendants.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation no later than **February 6, 2018**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the district court.   The parties are advised that this report and recommendation is not a final order of the court, and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the district court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the district court, except upon grounds of plain

error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE on the 23rd day of January, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE