IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSHUA HUTCHINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-CV-185-WKW-SMD |
| | ) |
| JOHHNY BATES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

Plaintiff brings a claim of deliberate indifference against Defendants pursuant to 42 U.S.C. § 1983.  (Doc. 70) at 14-15.  Plaintiff claims he was subjected to dangerous conditions of confinement while incarcerated at the Montgomery County Detention Center ("MCDC"), causing him significant and ongoing psychological damage.  *Id.* at 1-2.  Specifically, Plaintiff avers that, while he was in "extended periods of solitary confinement," Defendants "were aware of, and chose to ignore . . . his deterioration" and "were deliberately indifferent to [his] serious medical needs," which resulted in physical and emotional injuries.  *Id.* at 14-15.  Defendants have moved for summary judgment on Plaintiff's claim, arguing that Plaintiff has not established a prima facie case of deliberate indifference.  (Docs. 139, 141).  For the reasons stated more fully below, the undersigned recommends that Defendants' Motions for Summary Judgment are due to be granted.

## II. STATEMENT OF FACTS[1]

Plaintiff was a federal pre-trial detainee housed at MCDC from September 11, 2014 to April 28, 2015. (Doc. 140) at 1-3.[2] At the time of his detention, Plaintiff suffered from sleep apnea and required a CPAP machine to sleep. (Doc. 70) at 5; (Doc. 140) at 5. Pursuant to MCDC policy, jail staff placed Plaintiff in a single cell due to concerns that the CPAP machine and its cord could be used as a weapon if the Plaintiff were housed along-side other inmates. (Doc. 70) at 5; (Doc. 140) at 1, 5. Inmates with medical conditions requiring medical devices were normally housed in a single medical cell. *Id.* at 5. It was the policy of MCDC to not transfer inmates between medical cells and the general population when an inmate required regular treatment because transferring inmates increases the risk of injury to jail staff and other inmates as well as increasing the risk of escape. *Id.*

During his detention, Defendants were employed by non-party QCHC, Inc. to provide medical care to inmates at MCDC. (Doc. 70) at 4; (Doc. 140) at 6. From the beginning of his detention and throughout, Plaintiff was at times angry, aggressive, and threatening and at times refused food and medical care. (Doc. 140) at 6. Each day, a QCHC nurse (one of the named Defendants) visited Plaintiff's cell to refill his CPAP

---

[1] In making its determination on summary judgment, the Court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the evidence is in conflict, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
[2] Plaintiff "does not generally dispute the facts as alleged" in Defendants' Brief in Support of Summary Judgment. (Doc. 148) at 1.

2

with distilled water, administer medication, and/or take his weight. (Doc. 70) at 10; (Doc. 140) at 6; (Doc. 149) at 10. Plaintiff's cell was in the jail infirmary, next to the nurse station and he was seen by the nurses (including Defendants) on regular daily rounds. (Doc. 70) at 10. For over eight months, Plaintiff remained in a windowless cell with the lights always on and without access to jail programs and services. (Doc. 70) at 8-9.

According to the record evidence, the medical staff first noticed deterioration of Plaintiff's mental state on April 13, 2015. (Doc. 140) at 6-7; (Doc. 149) at 10-11. The on-duty nurse documented and reported Plaintiff's agitated state. (Doc. 140-25) at 6. On April 24, 2015, Plaintiff was examined by a physician and placed on suicide watch. (Doc. 140) at 8. On April 28, 2019, Plaintiff was transferred to the Montgomery city jail and placed in the general population. *Id.* at 9.

### III. PROCEDURAL HISTORY

Plaintiff filed a Complaint (Doc. 1) on March 29, 2017, bringing claims of discrimination and due process violations against nineteen defendants employed by QCHC and the Montgomery County Sheriff's Department. *Id.* at 1. Following multiple Motions to Dismiss, (Docs. 50, 52, 53, 62), Plaintiff requested (Doc. 67) and the Court granted (Doc. 69) leave to file an Amended Complaint (Doc. 70). Defendants again filed multiple Motions to Dismiss. (Docs. 72, 73, 75, 77). On March 26, 2018, the District Judge issued an Order (Doc. 121) dismissing all of Plaintiff's claims except for his §

1983 deliberate indifference claim against QCHC employees Bates, Gurley, Kern, Abbington, Baker, Clark, Smith, Varden, Beasley, Muse, and Patterson in their individual capacities. *Id.* at 12-13. After conducting discovery, the remaining Defendants filed the pending Motions for Summary Judgment (Docs. 139, 141) on the sole remaining claim, arguing that Plaintiff has failed to establish a prima facie case of deliberate indifference.

## IV. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court explains that '[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Id.* at 322. The legal elements of the claim dictate which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.*

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Patton v. Triad Guar. Ins. Corp.*, 277

F.3d 1294, 1296 (11th Cir. 2002). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson,* 477 U.S. at 255.

However, the Court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Matsushita*, 475 U.S. at 587). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted); *see also Matsushita*, 475 U.S. at 586 ("[O]nce the moving party has met its burden under Rule 56(a), the nonmoving party must do more than simply show there is some metaphysical doubt as to the material facts").

Likewise, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## V. DISCUSSION

"Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "The Eighth Amendment governs 'the treatment a prisoner receives in prison and the conditions under which he is confined.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).[3] "However, '[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

Deliberate indifference to the serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain" that is proscribed by the Eight Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prevail on a claim alleging constitutionally inadequate medical treatment, an inmate must, at a minimum, show that health care personnel acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 105-06; *Taylor*, 221 F.3d at 1258. A plaintiff must meet both an objective and a subjective standard of proof in establishing deliberate indifference to a serious medical need. *Campbell v. Sikes*, 169

---

[3] As a pretrial detainee, Plaintiff's deliberate indifference claim sounds in the Fifth Amendment due process clause rather than the Eight Amendment. However, his claim is analyzed under the same standard as a claim under the Eight Amendment. *See Taylor v. Adams*, 2221 F.3d 1254, 1257 n.3 (11th Cir. 2000).

F.3d 1353, 1363 (11th Cir. 1999). The objective component requires a plaintiff to establish: 1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm; and 2) the defendant's response to that need was poor enough to constitute an unnecessary and wanton infliction of pain. *Taylor*, 221 F.3d at 1258. The subjective component requires a plaintiff to establish: 1) subjective knowledge of a risk of serious harm; 2) disregard of that risk; and 3) the conduct committed by the defendant was more than merely negligent. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). The undersigned will discuss each of these elements in turn.

A. **Objective Component**

**1. Plaintiff has not established that he had an objectively serious medical need that, if left unattended, posed a substantial risk of serious harm.**

To prevail in a deliberate indifference action under § 1983, the burden falls upon Plaintiff to allege and prove the existence of a serious medical condition. *See Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574-75 (11th Cir. 1985). "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow*, 320 F.3d at 1243 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Taylor*, 221 F.3d at 1258).

7

In his Brief, (Doc. 148), Plaintiff correctly points out that the conditions of long-term isolation (or solitary confinement) create a risk of mental deterioration. *See Glossip v. Gross*, 135 S. Ct. 2726, 2765 (2015) (Breyer, J. dissenting) ("[I]t is well documented that such prolonged solitary confinement produces numerous deleterious harms."); *Davis v. Ayala*, 135 S. Ct. 2187, 2210 (2015) (Kennedy, J., concurring) ("[C]ommon side-effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors."). Here, the medical record shows that Plaintiff's mental state deteriorated during his detention. *See generally* (Doc. 140-4). However, Plaintiff has not demonstrated, nor does the record show, that his deterioration became a "serious medical need" that was either diagnosed by a physician or was "so obvious" that the necessity for a doctor's attention would be recognized. The nurses noticed Plaintiff's increased agitation on April 13 and increased the frequency of observation on April 17. (Doc. 140) at 16-17. On April 24, Plaintiff was seen by a physician who expressed concerns about his mental health and referred him to a psychiatrist but, notably, did not diagnose any serious medical need. *Id.* at 17. Although Plaintiff now claims he suffers from "a severe disorder" due to the circumstances of his detention, he admits he "has not yet been diagnosed" with any mental disorder attributable to his confinement. (Doc. 148) at 7. For these reasons, the undersigned concludes that Plaintiff has not established that he had an objectively serious medical need that, if left unattended, posed a substantial risk of serious harm, and,

therefore, has not sufficiently proven this element of his prima facie case.

## 2. Plaintiff has not shown that Defendants' response to a serious medical need was poor enough to constitute an unnecessary and wanton infliction of pain.

Even if Plaintiff did have a serious medical need, to prevail on his claim, Plaintiff must also show Defendants' response to his serious medical need was poor enough to constitute an unnecessary and wanton infliction of pain and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice." *Estelle*, 429 U.S. at 105-06 (internal quotation marks omitted); *Taylor*, 221 F.3d at 1258. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted). The Constitution does not require that inmate medical care be "perfect, the best obtainable, or even very good." *Id.* at 1510.

Here, Plaintiff has not shown that Defendants' response to his medical need was an unnecessary and wanton infliction of pain. By his own admission, Plaintiff was "under close observation" by medical staff during his time at MCDC and had "daily interactions" with the nurses. (Doc. 70) at 10. Plaintiff's claim that Defendants "fail[ed] to check on [him] for two months" is contradicted by the evidence and by his own admissions. (Doc. 148) at 3. Each day, a QCHC nurse visited Plaintiff's cell to refill his CPAP with distilled water, administer medication, and/or take his weight. (Doc. 70) at 10; (Doc. 140) at 6; (Doc. 149) at 10. When Plaintiff showed signs of

deterioration, nurses documented and reported it.  (Doc. 140-25); (Doc. 140-4) at 26-28. When Plaintiff's condition worsened, a physician examined him, prescribed medications, and put him on suicide watch.  (Doc. 140-4) at 12-15; 28.  Plaintiff avers that the proper course of treatment for his condition was removal from solitary confinement and Defendants' failure to do so constituted deliberate indifference.  (Doc. 148) at 3.  While transfer, arguably, may have been the best course of action, Plaintiff does not show that Defendants' chosen course of treatment (i.e. medication and observation) was "grossly incompetent."  Indeed, although Defendants' medical treatment may not have been "the best obtainable," it certainly was not "intolerable."  For these reasons, the undersigned concludes that Plaintiff has not established that Defendants' response to his medical need was poor enough to constitute an unnecessary and wanton infliction of pain, and, therefore, has not sufficiently proven this element of his prima facie case.

**B.  Subjective Component**

**1.  Plaintiff has not shown that Defendants were subjectively aware of a risk of serious harm to Plaintiff.**

To prevail on a claim of deliberate indifference, Plaintiff must also show that Defendants were subjectively aware of a risk of harm.  *Farmer*, 511 U.S. at 837.  To be considered aware of the harm, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  *Id.*  "No liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not. . .

.'"  *Burnett v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting *Farmer*, 511 U.S. at 837).  A defendant's subjective awareness of a risk of harm can be determined based on circumstantial evidence, including "the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.  If a particular risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it," such evidence permits a trier of fact to conclude that the officials had actual knowledge of the risk. *Id.* at 842-43.

Here, Plaintiff has failed to show that Defendants were subjectively aware of a substantial risk of serious harm to him.  Indeed, Plaintiff has failed to show that a substantial risk of serious harm even existed.  While Plaintiff explains that, in general, the conditions of long-term isolation create "potentially adverse effects" that were "well known," (Doc. 148) at 2, he does not demonstrate how that general risk, in this specific situation, was substantial or how it was obvious to Defendants.  As Plaintiff admits, "[t]he fact that such isolation is a risk does not mean everyone subjected to such conditions is going to succumb."  *Id.* at 6.  Further, Plaintiff does not proffer any evidence that establishes that Defendants had exposure to information concerning the risk.  For these reasons, the undersigned concludes Plaintiff has not established that Defendants were subjectively aware of a risk of serious harm to Plaintiff, and, therefore, has not sufficiently proven this element of his prima facie case.

**2. Plaintiff has failed to show that Defendants disregarded a risk of harm to him.**

To state a claim for deliberate indifference "the plaintiff must submit evidence that the medical professional defendant actually was aware of the significant risk of serious harm but deliberately proceeded with grossly inadequate treatment anyway." *Campbell*, 169 F.3d at 1370. "'Each individual Defendant must be judged separately and on the basis of what that person knows.'" *Burnette*, 533 F.3d at 1331. "[I]mputed or collective knowledge cannot serve as the basis of a claim of deliberate indifference." *Id.*

Here, after a complete examination of the record, the undersigned concludes that none of the Defendants, based upon the information available to each of them—individually—at the pertinent time, deliberately ignored Plaintiff's allegedly serious medical condition. On the contrary, the record shows that Plaintiff was under near-constant medical treatment and observation and, when his mental state deteriorated, Defendants took additional steps to monitor and treat his condition. *See* (Doc. 70) at 10; (Doc. 140) at 6; (Doc. 149) at 10. Importantly, nowhere in his Amended Complaint (Doc. 70) or in his Brief in Opposition (Doc. 148) to Defendants' Motions for Summary Judgment does Plaintiff address the subjective knowledge of each *individual* Defendant. *See Jackson v. West*, 787 F.3d 1345, 1357 (11th Cir. 2015) (holding that the court "must consider each [defendant] individually [and] analyze what each [defendant] knew about [the risk] at the time. . . ."). For these reasons, the undersigned concludes that Plaintiff

has not established that Defendants deliberately disregarded a risk of harm to him, and, therefore, has not sufficiently proven this element of his prima facie case.

### 3. Plaintiff has failed to show the conduct of Defendants was more than merely negligent.

To prevail on his deliberate indifference claim, Plaintiff must also demonstrate that Defendants' conduct was more than merely negligent. "While . . . deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 836. "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Id.* "Medical malpractice does not become a constitutional violation merely because the victim is [covered by the Eighth Amendment]." *Estelle*, 429 U.S. at 292. "Medical treatment [is deliberately indifferent] only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

Assuming, *arguendo*, that Defendants failed to respond correctly to a risk of harm to Plaintiff, he has not shown that the medical care they provided to him was grossly incompetent, reckless, or something greater than mere negligence. Plaintiff contends that Defendants "chose not to monitor [him], or even visit him . . . " for two months and

that such behavior constitutes deliberate indifference. (Doc. 148) at 9. However, as previously discussed, the record and Plaintiff's own admissions directly contradicts that assertion. *See* (Doc. 140-4) at 17,19,34,49, 61, 64-65; (Doc. 70) at 10. Hence, the undersigned concludes that Plaintiff has not established that the conduct of Defendants was more than negligent, and, therefore, has not sufficiently proven this element of his prima facie case.

## VI. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the undersigned that Defendants' Motions for Summary judgment (Doc. 139, 141) be GRANTED and Plaintiff's Amended Complaint (Doc. 70) be DISMISSED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before August 14, 2019**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

    Done this 31st day of July, 2019.

                                      /s/ Stephen M. Doyle
                                      UNITED STATES MAGISTRATE JUDGE